JOHN J. RAFTERY, JR., A MINOR BY HIS FATHER AND NEXT FRIEND, JOHN J. RAFTERY, APPELLANT, v. KANSAS CITY GAS CO., A CORPORATION, RESPONDENT.—169 S. W. (2d) 105.

Kansas City Court of Appeals.   February 1, 1943.

428

Homer A. Cope, Cope & Hadsell, John C. Pohlmann and Walter A. Raymond for appellant.

*Charles M. Miller* for respondent.

CAVE, J.—This is a suit instituted by appellant (plaintiff below) against respondent (defendant below) to recover damages for personal injuries suffered by appellant as a result of alleged negligence of respondent. At the close of appellant's evidence, the trial court marked "given" an instruction in the nature of a demurrer offered by respondent at which time appellant took an involuntary nonsuit with leave to file motion to set same aside, which was done and said motion was overruled and appeal duly taken.

Plaintiff's petition alleged "that he was a minor, then twelve years of age . . .; that the defendant was engaged in transporting and selling natural gas in Kansas City, Missouri; that defendant sold gas appliances including automatic hot water heaters; that in connection with its said business defendant maintained a department for inspecting and servicing gas appliances; that the gas automatic hot water heater . . . where plaintiff lived with his parents failed to properly function; that defendant's inspector and repairman inspected said water heater and attempted to repair the same and reported the water heater would function properly and was safe to use; that the light under the water heater went out and plaintiff lighted a match to light the same when gas which had escaped and accumulated in the water heater exploded and burned and seriously injured the plaintiff; that said explosion and plaintiff's injuries were caused by the negligence of defendant's service man: (a) in failing to properly test said water heater as to draft to keep it lighted and to prevent gas accumulating in the water heater; (b) in failing to clean the flues of the water heater to insure sufficient draft; (c) and in neglightly assuring plaintiff's parents that the water heater would function properly and was safe to use."

Defendant's answer consisted of a general denial and plea of contributory negligence.

The evidence discloses that at the time of the explosion on May 11, 1940, appellant was a boy eleven years and four months of age. He lived with his parents in the upper part of a duplex apartment. In the basement was an automatic gas water heater, the pilot light of which had gone out two or three times prior to the date of the explosion. On such occasions appellant's mother would call respondent and it would send one of its service men to service the heater. The last time this occurred was some two weeks before the date of injury, at which time she heard him "tinkering in the basement" and he came upstairs and told her "it was all right and ask me to sign a slip he had." There was no further trouble with the heater until the day of the injury.

About 5:30 p. m. on May 11th, appellant's father attempted to use the hot water and found it was cold, and told appellant to go down and see if the heater was lighted. He went to the basement and opened a small door at the bottom of the heater and saw no light, and thought the gas was off and that he could light the pilot burner

without danger. He lighted a match and when he brought it near the small door there was an explosion, burning his hands and face. He testified that he had never before attempted to light the heater; did not know where the valves were and did not look to see if the gas was turned on. He had lighted the gas stove in the kitchen and had learned at school that bringing a lighted match in contract with escaping gas would likely cause an explosion.

The hot water heater is described as a round boiler about five feet six inches in height and fifteen inches in diameter, with forty gallons capacity. To heat the water, there is attached a heater at the bottom of the boiler and gas enters through a burner; there is a thermostat in the center of the boiler which regulates the heat of the water. When the water is cold, the thermostat automatically opens and allows the gas to pass into and through the burner, which is ignited by a small pilot light immediately adjacent thereto. When the water is hot, the thermostat automatically shuts off the gas to the burner, but the pilot light continues to burn; it is not attached to the thermostat and is supposed to burn all the time so as to ignite the gas passing through the burner. In about the center of the boiler, and extending from the bottom to the top, is a flue about four inches in diameter; this permits the heat and fumes to pass up through this flue; attached to the top of that flue is a pipe leading to the main chimney or pipe of the house.

Plaintiff's petition alleged specific negligence as above mentioned. His theory is that the aforementioned flue became clogged with soot, thereby extinguishing the pilot light and permitting gas to escape through the burner and the pilot light into the flue and accumulate there because it could not escape upward and that such accumulated gas caused the explosion when he lighted the match; and that the defendant knew or by the exercise of ordinary care could have known of that condition at the time its service man inspected and adjusted the pilot light some two weeks before the day of the explosion. There was no evidence what defendant's service man did when he was there two weeks before the accident, or what he had done on one or two other prior occasions when the pilot light went out. There was not a scintilla of evidence that the flue was clogged with soot at the time defendant's service man was last there; and there is no evidence in the record that the flue became clogged with soot and caused the pilot light to go out and the gas to accumulate and cause the explosion of May 11th, unless we can consider as competent and sufficient the opinion evidence of an expert witness as proof of such facts and conditions as existing on May 11th. Certain portions of such witness' testimony was excluded by the trial court on objections by defendant; and since appellant's assignments of error complain principally of such exclusions, we will consider such proffered testimony under the proper assignments of error.

The first complaint is that the court erred in excluding certain statements made by respondent's service man two days after the explosion when he came out to examine the heater. Appellant's father testified concerning this that two days after accident the service man came and while "he was working on the heater and had a hose in the top of the vent flushing it out . . . I ask him how it happened and he said—"at which point respondent's objection was sustained and offer was made as follows: "The plaintiff offers to prove, if the witness were permitted to testify, . . . that the man told this witness when asked as to how—when asked as to the reason for the accident in question, that it was his judgment and opinion from his experience with the same type of burner or heater that the flues were clogged up and there was not sufficient ventilation, thereby extinguishing the pilot light and causing accumulated gas to fail to escape therefrom."

Appellant contends that the above statement of the employee constitutes an admission which would bind the employer. In the first place, the statement was not an admission of any fact but an expression of his opinion of what caused the explosion, which was an issue to be decided by the jury from proven facts. It doesn't even appear from the record what facts, if any, the employee was basing his conclusion or opinion on. Appellant relies on the cases of Fisher v. Pullman Co., 212 Mo. App. 280; State ex rel. Kresge Co. v. Shain, 340 Mo. 145, 101 S. W. (2d) 14; and Henry v. First National Bank of Kansas City, 232 Mo. App. 1071, 115 S. W. (2d) 121. In all of those cases, the point at issue was the admissibility of a statement of a fact by the employee, and not what his opinion or conclusion was. Furthermore, in those cases, the statement of the agent was admitted solely to prove knowledge on the part of the master of an existing condition or fact and was not admitted as proof of negligence. [State ex rel. Kresge Co. v. Shain et al., *supra*; See also McDermott v. Hannibal & St. Joseph R. Co., 87 Mo. 285; O'Leary v. Scullin Steel Co., 303 Mo. 363.] This agent had no authority to create a liability against his master by expressing an opinion, two days after the explosion, as to what caused it. [Cross v. Northern Central Co., 186 S. W. 528; Kane v. Missouri Pacific R. Co., 157 S. W. 644; Shelton v. Wolf Cheese Co., 93 S. W. (2d) 947.] The court properly excluded such testimony.

The next complaint is that the court erred in excluding certain testimony of a witness produced and qualified, without objection, as an expert, concerning the construction, mechanical parts and operations of the kind and character of heater here involved. The first two questions complained of by appellant in his brief were answered without objection and we need not consider that matter. Counsel for appellant propounded to the witness a hypothetical question detailing certain facts which were in evidence and concluded the question by asking, "do you have any opinion as to the reason for the light (pilot light)

going out in view of the fact that it had burned for a period of approximately two weeks before that time?" The court sustained the objection "on the ground it is too speculative." If the witness had been permitted to answer he would have stated: "My opinion is the flue chamber was filled up with soot, not completely filled, because it cannot be filled completely. In the first place, on these automatic burners, it is twenty-five feet away from the flue, but in the two weeks' period it could have been eventually filled enough so that it would cause the flame to smother and go out. That is in the period of two weeks there could have been a small hole and that was completely closed up. It is a situation you find numerous times." The court then asked this question: "There are other reasons than the one you say that could have caused this pilot light to go out, is that true? A. That is true." Appellant's counsel asked, "Is there any other reason, Mr. Davidson, excepting a clogged flue that would cause gas to accumulate in the gas chamber, which might otherwise escape if the flue was not clogged? A. If the flue is open the gas would not accumulate. It would go right up the flue. . . . We know from experience that gas will not accumulate if the flue is open, it will go right up the flue." The record shows that the court overruled the objection to that question and permitted the witness to answer and overruled respondent's motion to strike out the answer. While this question was propounded and the answer given out of the presence of the jury, the offer of such testimony was not renewed by appellant in the presence of the jury, even though the court had overruled defendant's objections and had refused to strike out the answer. We don't believe appellant is in position now to complain of the court's ruling on that question and answer because the ruling was in his favor.

There was then propounded to the witness a hypothetical question reciting facts which were in evidence, and concluded by asking, "do you have an opinion as to what caused that particular explosion, considering all the facts in evidence, and considering the facts I have given you in the question, and considering your inspection of the burner, and the type of burner, and your experience with this type of burner?" The witness answered, "I still claim the gas would not accumulate if they had a free flue on the heater." He was then asked, "The question is, what is your opinion as to what facts caused the explosion under the circumstances?" Objection to this was sustained, but for the record, the witness answered: "Well, of course the explosion occurred from an accumulation of gas, no question about that." Then this question, "and do you have any opinion as to what caused the gas to accumulate, assuming the facts heretofore given in the question?" Objection was sustained. but if the witness had been permitted to answer, he would have said: "I consider that there was a clog in the flue causing the accumulation of gas." The next question: "Mr. Davidson, assuming as true that there is a clogged flue which prevents a ventilation line into the pipe leading into the chimney, and

which will allow gas accumulations in the chimney proper to escape, why would the clogged flue put out a pilot light?" Objection sustained, but if permitted, the witness would have answered, "It would smother it out, the clogged flue would, because it would not have a free draft to go up to the boiler." Then this question: "Assuming the pilot light had gone out on at least one occasion before the explosion on May 11, 1940, would the exercise of ordinary care on the part of a plumber or repairman sent to repair the burner and determine the cause for the light going out, would the exercise of ordinary care on his part have determined whether or not there was a clogged flue in the burner?" Objection sustained, but if permitted, the witness would have answered: "A man going to repair a burner should look at all aspects of the burner for any trouble, to see that the flue was clear and free and the mechanical operation of the pilot light was in good condition." Another hypothetical question was propounded to the witness and concluded by asking: "Would you say in your opinion as an expert plumber and one familiar with the type of burner in question, that if an inspection had been made, in the exercise of ordinary care by a representative of the gas company dealing with the problem of gas that it would have been determined that there was a clogged flue which extinguished the pilot light and which allowed gas to accumulate in the chamber proper?" If permitted, he would have answered: "If there had been a proper inspection that it should have disclosed the trouble. . . . The trouble in the flue. . . . The accumulation of soot in the flue. . . . which caused an accumulation of gas in the burner chamber of the flue going up in there, whatever it was, outside of the vent clogged by soot." Then this question: "Assuming all the facts given in the last question as true, is there any other reason for the accumulation of gas causing such an explosion as I have suggested?" Objection sustained, but if permitted, the witness would have answered, "No, sir."

We think the trial court properly excluded the testimony concerning the question of why "the pilot light went out," because the witness admitted there were other reasons why it would go out besides the one he gave as his opinion of the cause. There was no evidence that the flue was clogged with soot, and it would be mere speculation as to what caused it to go out. Evidence based on speculation and conjecture has no probative value and should be excluded. It does not make a submissible issue. [22 C. J., page 640, sec. 735; 66 Mo. App. 500; Vitale v. Duerbeck (Mo.), 92 S. W. (2d) 691; Kimmie v. Terminal Assn., 66 S. W. (2d) 561; Hunt v. Armour & Co. (Mo.), 136 S. W. (2d) 312.]

The next line of testimony excluded was to the effect that, in the opinion of the witness, the only thing about this heater that would cause the escaping gas to accumulate within the pipe and around the burner and pilot light would be the fact that the flue was clogged

so that no draft could pass through. But we are confronted with the question of whether, even if that testimony was proper, did the plaintiff make a submissible case? We think not. It is the rule in this State that, "where the evidence shows that the occurrence which caused plaintiff's injury may have resulted from two or more causes, in order to hold defendant liable, plaintiff must have substantial evidence tending to show that the cause for which defendant would be liable was the actual cause thereof." [Cole v. Uhlmann Grain Co. (Mo.), 100 S. W. (2d) 311, l. c. 317.] It is also the rule that "whether the evidence in a given case is sufficient to support the finding of the jury, when taken and considered in the fashion in which it must be on demurrer, depends on whether it is sufficient to establish with reasonable certainty in the minds of persons of ordinary and average intelligence the existence of the facts on which the finding is necessarily based." [James v. Bailey Reynolds Chandelier Co. (Mo.), 30 S. W. (2d) 118, 123.]

It is conceded that the defendant did not own the heater or any of the pipes, flue, or parts connected therewith, and was not charged with the supervision of the heater and its parts or with the responsibility of keeping it in good condition. It is also conceded that the defendant was not responsible for the accumulation of soot, if it did accumulate, in the flue. Therefore, the cases which discuss the question of liability of gas companies for not keeping all their equipment in good condition are not controlling here.

The substance of plaintiff's contention is that when defendant's service man was called some two weeks before the accident to remedy the pilot light being extinguished, he should have, by the use of ordinary care, ascertained that soot was accumulating in the flue to such an extent that it would smother the pilot light and to have at that time eliminated such accumulation. There is no direct evidence in this record that soot ever accumulated in the flue. Plaintiff contends that the fact that the pilot light went out on two occasions, one about a month and one about two weeks before the date of this accident, and that gas accumulated in the chamber, is sufficient to justify the inference that the flue was totally or substantially clogged with soot at that time. But plaintiff's own expert witness testified that there were other conditions which would cause the pilot light to be extinguished and it appears from the evidence that when the pilot light first went out, about a month before the accident, defendant's repair man found a large amount of ashes and cinders about the base of the heater and directed its removal, which was done, and the pilot light and burner worked properly for some two weeks until again it was extinguished and that fact reported to the defendant. On that occasion, the service man came and the record is silent as to what he did or did not do, except that the mother said she heard him "tinkering in the basement," and he came upstairs and reported to her that the pilot light was working properly, which was a fact, and it

continued to work properly for at least two weeks before the date of the accident. Whether he examined the flue at that time or what its condition was or what caused the pilot light to go out is a matter of conjecture. But plaintiff says that his expert witness would have testified that the gas would not have accumulated in the chamber if the flue had been free and open. The only evidence that the gas ever accumulated in the chamber was the fact of the explosion on May 11th, and it is conceded that the defendant would not be liable for what happened to the burner or its equipment between the date its service man was last there and the day of the explosion. There is no evidence as to how long it would ordinarily take for this flue to become clogged with soot. Plaintiff's expert gave it as his opinion that "the flue chamber was filled up with soot, not completely filled because it cannot be filled completely. . . . But in the two weeks period it could have been eventually filled enough so that it would cause the flame to smother and go out;", but this opinion is based on the fact that the pilot light went out, which he says could happen from other causes.

This record conclusively shows that when defendant's service man was last there the pilot light and burner worked properly and continued to do so for two weeks or more thereafter. Therefore, this is not a case where the damage complained of followed the alleged negligent act in an unbroken sequence. Is it a reasonable and logical inference that if the flue was clogged on May 11th, the date of the explosion, that therefore it must have been clogged or reasonably so, two weeks or more before when defendant's agent was last there? We think such an inference is certainly in the realm of speculation and conjecture; and certainly so, when plaintiff's expert witness testified that other causes would extinguish the pilot light besides a clogged flue. In the case of Kimmie v. Terminal Association, *supra,* the Supreme Court said: "The facts on which an opinion is based must, like the facts sufficient to support the verdict of the jury, measure up to the legal requirements. Even a positive opinion must have to support it reasons and testimony which would give it sufficient probative force to be substantial evidence." It seems clear to us, from plaintiff's own testimony, that the existence of specific negligence on the part of the defendant is left wholly to conjecture. Under such circumstances, a submissible case was not made, and the trial court properly sustained the demurrer to the evidence. [Hunt v. Armour & Co. (Mo.), *supra;* Brown v. St. Louis County Gas Company, 131 S. W. (2d) 354.] It follows that the judgment of the trial court should be sustained. It is so ordered.

All concur.