Mary Josephine Wilson, (Plaintiff) Appellant, v. Miss Hulling's Cafeterias, Inc., (Defendant) Respondent, No. 41352—229 S. W. (2d) 556.

Division One, April 10, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, May 8, 1950.

---

*Ninian M. Edwards, Jr.,* and *N. Murry Edwards* for appellant.

*Linster & Beall, John S. Marsalek* and *Moser, Marsalek, Carpenter, Cleary & Carter* for respondent.

DALTON, J.—Action for damages for personal injuries sustained when plaintiff, who was a patron in defendant's cafeteria in the City of St. Louis, stepped on some substance on the floor of the cafeteria and slipped and fell. Verdict and judgment were for defendant and plaintiff has appealed.

Plaintiff's evidence tended to show that, on the evening of June 28, 1947, plaintiff in company with her brother, sister and sister-in-law purchased meals from defendant at its cafeteria located at 1103 Locust street, and, after an hour or hour and a half at one of defendant's tables, they arose and started to leave. Within seven to ten feet of the table where they had been seated, plaintiff said she stepped on something on the floor causing her to fall and break her left wrist. She fell between the table at which she had been seated and another table a short distance away.

Immediately after plaintiff and her party had first been seated, plaintiff observed a waitress in uniform clearing the dishes off of this other table across the aisle. No one was then sitting there or close to it and, during the hour to an hour and one-half plaintiff and her party were seated at their table, no patrons or waitresses passed between the two tables or over the place where plaintiff subsequently fell.

Plaintiff testified that she arose from the table where she had been seated, passed around it and started in the direction of the cashier's desk and, while she was between the table which she had seen the waitress clearing and the table at which she had been seated, she slipped and fell. She said "I stepped on something that was either a little grease or gravy, it was a soft substance, * * * my right foot * * * skidded and went, well, a foot or a foot and a half. It threw me on my left, as I went forward I fell on my left wrist and broke it. * * * It was either grease or gravy, some grayish matter. * * * It was something slippery and it was something near the color of the floor—grayish matter, sort of." Plaintiff was lifted up and placed in a chair near the table where she fell. She could very distinctly see the place where her foot had slipped.

Concerning its size, she said it "probably might have been two or three inches, but my foot in it, it made like a long line, because, as I say, I slipped about a foot or a foot and a half and the mark where my foot slipped showed the mark of the grease, * * * when I stepped in it it was spread as I went along, my foot slipped in it." In about ten minutes after she fell a "waitress came with a cloth and wiped the spot," wiped it all up.

Plaintiff was wearing white leather shoes, "they weren't real new, they had been polished." She didn't know "just when they were polished." After she fell there was a white mark on the floor made by her shoe. It was "at the end of where I slipped when my foot was thrown. * * * I was thrown to the side, and then when the heel of my shoe touched the side of my shoe and hit the floor, it showed the mark in white."

Plaintiff's left foot was smaller than her right and that condition had existed since birth. She was "lame in that foot." She said: "It is strong, but not as strong as the right. * * * * The reason I wear a special shoe is because it would * * * low shoes would be too large for my left foot, and in order to have just one pair of shoes, if I had high shoes it would stay. On my left foot it would be too large if I had a low shoe. Q. You wear a high shoe so you can lace it up and keep it on? A. Yes, it would be too large for my left foot, but it would fit my right foot."

Defendant's evidence tended to show that the floor of the cafeteria was covered with asphalt tile and that it was "practically impossible to slip on it, unless some foreign object such as a piece of meat that is greasy or something like that were left on the floor." A witness who saw plaintiff fall testified that plaintiff "stumbled over and fell * * * she went forward * * * apparently this lady fell forward like you stumbled on something. * * * She started from the chair like and stumbled and she fell in the aisle," within about four feet of where she had been sitting. Witness saw her falling forward, saw her fall between the tables and went to her and assisted her to a chair. There was nothing on the floor, no grease or gravy or anything of that kind. Witness asked plaintiff whether she "slipped," and plaintiff said she "fell." This witness saw no mark on the floor and saw no one come up after the occurrence and wipe the floor.

Another witness testified: "I was just passing by, just walking toward the cashier, and I noticed she was down on the floor. * * * I helped pick her up. * * * It seems she fell on her arm. * * * I inspected the floor after we picked her up * * *." Witness saw a white skid mark, eight or ten inches long, extending east and west. There wasn't any grease or gravy or anything of that kind on the floor. Witness stayed about ten minutes and no one wiped the floor with a rag or did anything to the floor.

Another witness testified that she was walking over to the table to pick up the dishes from the table where plaintiff had been seated. She saw plaintiff standing—holding onto a chair. Plaintiff "was pretty pale, and just a few minutes after, she fell. * * * A couple of seconds, I imagine, and then she fell." Witness was about two or three feet from her. "She fell in a heap." Witness had turned around and "didn't actually see her in the act of going down." The witness further testified: "They sat her on a chair and she told me that everything went black on her." Witness asked "what happened" and plaintiff said, "everything was black." Witness inspected the floor and there was nothing on the floor. "There was no mark of wax on there or there wasn't no food on the floor, there was nothing on there. * * * We looked it over to see if there was any smears of wax on there, or any or anything that could have made her slip, or if anyone dropped anything on the floor, and I didn't find nothing."

In rebuttal, plaintiff denied that she stumbled and fell, or that she told anyone "that she blackened out and fell." Other facts will be stated in the course of the opinion.

Appellant assigns error on the giving of Instruction 4 requested by defendant, on the exclusion of evidence offered by plaintiff and on the court's action in sustaining an objection to the argument of plaintiff's counsel to the jury. Respondent contends that the instruction is correct; that the excluded evidence was inadmissible; that the objection to the argument was properly sustained; and that, in any event, appellant was not prejudiced since a submissible case of negligence was not made out. Respondent's theory is that plaintiff offered no substantial evidence tending to show that the substance, which is alleged to have been on the floor and to have caused plaintiff's fall, "was there for a sufficient length of time to charge defendant with notice of its presence" and to make an issue of negligence for the jury. State ex rel. Trading Post Co. v. Shain, 342 Mo. 588, 116 S. W. (2d) 99; McKeighan v. Kline's, Inc., 339 Mo. 523, 98 S. W. (2d) 555. We need review only the errors assigned.

Instruction 4 is as follows: "The Court instructs the jury that the mere fact that plaintiff fell and sustained an injury while upon defendant's premises, upon the occasion mentioned in evidence, does not of itself warrant you in finding against the defendant. In this connection, the Court further instructs you that if you believe and find from the evidence that, after arising from her chair, the plaintiff commenced to walk toward the cashier's stand in defendant's cafeteria, and that while so doing, she lost her equilibrium and fell as a result of her physical condition, and that her fall was not caused by any foreign matter on the floor of defendant's premises, then the Court instructs you that the plaintiff is not entitled to

recover against the defendant in this suit, and you should find your verdict in favor of the defendant.''

■ Appellant contends that the first part of the instruction was misleading; and that it argumentatively, unnecessarily and erroneously stated that the ''mere fact'' that plaintiff fell and was injured did not in itself warrant a verdict for plaintiff. Appellant cites Stumpf v. Panhandle Eastern Pipeline Co., 354 Mo. 208, 189 S. W. (2d) 223, 229, where this court referred to an instruction as argumentative and ''the cautionary 'mere fact' unnecessary.'' The part of the instruction complained of is cautionary. The giving of it was within the discretion of the trial court and was not error. Dove v. Atchison, T. & S. F. R. Co., 349 Mo. 798, 163 S. W. (2d) 548, 552; Steinmetz v. Nichols, 352 Mo. 1047, 180 S. W. (2d) 712, 714; Payne v. Carson (Mo. Sup.), 224 S. W. (2d) 60, 62.

■ Appellant further contends that the instruction erroneously submitted contributory negligence as a defense when such affirmative defense was not pleaded. Appellant cites Lyons v. Wells (Mo. App.), 270 S. W. 129, 130; Shaw v. Wilcox (Mo. App.), 224 S. W. 58, 59; Schuler v. St. Louis Can Co., 322 Mo. App. 765, 18 S. W. (2d) 42, and other cases. There is no merit in this contention. The instruction submits no voluntary, conscious or negligent act of the plaintiff as a defense. That ''she lost her equilibrium and fell as a result of her physical condition'' does not in our opinion submit any act of plaintiff to which negligence or contributory negligence could be applied. Nor does the instruction direct a verdict for defendant ''if plaintiff's physical condition *contributed* to cause her fall,'' as appellant contends. Nor does the instruction set up a different standard of care for ''the well and strong'' as contrasted with ''the infirm and lame'' or conflict with the rule announced in Howell v. Kroger Groc. & Baking Co. (Mo. App.), 178 S. W. (2d) 101, 105.

■ Appellant further contends the instruction erroneously limited plaintiff's right of recovery to injuries caused by ■ ''foreign matter on the floor,'' and erroneously told the jury plaintiff could not recover unless her fall was so caused. Plaintiff's own testimony, set out supra, tended to show that her fall was caused solely by the presence of some foreign matter on the floor, to wit, ''grease or gravy, some grayish matter.'' When she ''stepped in it it was spread'' as her foot slipped in it. In submitting her case to the jury plaintiff submitted a finding, including the following, that ''there was *on the floor* in defendant's said restaurant a *substance* which *caused the floor* to be wet, dirty, greasy, slick and slippery, * * * that plaintiff was not warned of the presence of *said ·substance on said floor* * * * and * * * that defendant * * * could have known of *the presence of said 'substance on said floor*, if any, in time *to have removed the same*.'' (Italics ours). In view of plaintiff's

own testimony and her own submission of her cause to the jury, Instruction 4 was not erroneous in limiting plaintiff's right of recovery to injuries caused by the presence of "foreign matter on the floor of defendant's premises." Further, in her reply brief, appellant says "the testimony is * * * uncontradicted that the grease and gravy on the floor that caused plaintiff to fall was there from an hour to an hour and a half before she fell."

Appellant further contends that the instruction erroneously submitted to the jury, as a defense, "facts not pleaded," to wit, whether or not plaintiff's physical condition caused her to fall; and that, since no such defense was pleaded, the instruction is erroneous. Appellant insists that the instruction is argumentative and singles out and comments upon certain parts of the evidence such as plaintiff's physical condition and the foreign matter on the floor. The instruction submitted defendant's theory of the case, to wit, that plaintiff's fall was not caused by any foreign matter on the floor, but was in fact caused by plaintiff's physical condition. There was evidence not only as to plaintiff's physical infirmity—the condition of her left foot, but also concerning her being "pretty pale" and holding onto a chair and falling in "a heap." There was evidence that she appeared to stumble and fall forward within four feet of where she was sitting. The inference could be drawn from these facts that plaintiff's fall was caused by her physical condition. The submission in the instruction of the essential facts, which would authorize a verdict for defendant, was not a prejudicial singling out of nor a comment upon the specific facts submitted. The court could not have submitted the ultimate facts without mentioning them. Parker v. St. Louis-S. F. Ry. Co. (Mo. Sup.), 41 S. W. (2d) 386; Ward v. Mo. Pac. Ry. Co., 311 Mo. 92, 277 S. W. 908, 911; Brinkmann Realty Co. v. Deidesheimer (Mo. App.), 201 S. W. (2d) 503, 508. Defendant was entitled to an affirmative submission of its own theory of the facts which, if found, would defeat a recovery by plaintiff and absolve defendant from liability. Wilson v. Thompson, 345 Mo. 319, 133 S. W. (2d) 331, 334; Broderick v. Brennan (Mo. App.), 170 S. W. (2d) 686, 688. As stated, the ultimate facts sumitted, to wit, that plaintiff "lost her equilibrium and fell as a result of her physical condition" could have been inferred from the evidence in the case and, such a finding, together with the finding that plaintiff's "fall was not caused by any foreign matter on the floor," excluded the facts necessary to authorize a recovery by plaintiff. Such facts did not need to be specially pleaded as they tended to controvert the essential grounds of plaintiff's case. Stein v. Battenfield Oil & Grease Co., 327 Mo. 804, 39 S. W. (2d) 345, 350; State v. Thompson, 337 Mo. 328, 85 S. W. (2d) 594, 598; State ex rel. Spaulding v. Peterson, 142 Mo. 526, 532, 39 S. W. 453; Jacobs v. Moseley, 91 Mo. 457, 462, 4 S. W. 135.

 Appellant further assigns error on the exclusion of certain evidence which she contends was competent and admissible as an admission against interest and as a part of the res gestae. Plaintiff testified that, after she fell and was injured, she was placed in a chair and "they said they would send for someone, but that he was in another store." She wasn't sure of his name but thought "it might have been Hill." It might have been ten minutes "before some waitress wiped up the spot on the floor" and Mr. Hill did not arrive until after that. She said: "I had to wait some little time * * * I really think it was fifteen or twenty minutes." When he came he "wrapped my arm * * * fixed my wrist the best he could, made sort of a sling for me." She talked to him and he called a taxicab, put her in it, paid the fare and sent her to the City Hospital. The evidence offered and excluded was "an offer of proof, that if this witness, the plaintiff, would be permitted to testify, she would testify that Mr. Hill, known as the manager of the defendant restaurant, stated that, after looking at the floor and the greasy spot where her foot had slipped, that they would assume all responsibility for everything, that he would * * * employ a doctor to treat her, and that they would take care of everything." After the offer was excluded, plaintiff testified "there was no man there until Mr. Hill came, because they told me they were phoning for him, he was at another store and he would come just as soon as he could, so that we had a little wait while we were waiting for him. * * * Well, it might be as long as twenty minutes, I wouldn't say, until Mr. Hill came, but I know we had a little wait for him." One of defendant's witnesses subsequently testified that a Mr. Hill, who was at 725 Olive Street, was called after plaintiff was injured and he came over to 1103 Locust.

Since the evidence was excluded, we need not consider the objection made thereto, nor the reasons assigned for its exclusion, but only whether it was competent and admissible and its exclusion prejudicial to appellant. The excluded evidence was not admissible on any theory of res gestae. Mr. Hill was not present when plaintiff fell and was injured. He could have known of her fall only by hearsay. If there had been anything on the floor, it had been wiped up before he arrived. He was called from another store and did not arrive for some fifteen to twenty minutes after her fall. Any statements by Hill were not contemporaneous with any of the essential facts under investigation here. The offered statements were not so clearly connected with the principal fact or event that they could be said to have been produced by it, or that they were unpremeditated, spontaneous and not the result of design. The statements were not a part of the transaction or happening under investigation, nor incidental to it, and they were not explanatory of it. They were not admissible as a part of the res gestae. Schroeder

v. Rawlings, 344 Mo. 630, 127 S. W. (2d) 678, 681; Sconce v. Jones, 343 Mo. 362, 121 S.. W. (2d) 777, 781; Woods v. Southern R. Co. (Mo. Sup.), 73 S. W. (2d) 374; Redmon v. Metropolitan St. R. Co., 185 Mo. 1, 11, 84 S. W. 26.

█ Was the excluded evidence admissible as an admission? Appellant contends that it ''was admissible as an admission against interest by an agent of the defendant, while the agent was acting in his capacity as the manager in charge of defendant's restaurant, within the scope of his employment''; and that the statements were made to plaintiff by Hill while Hill was engaged in performing his duties as manager of defendant's cafeteria. We need not determine the issue of Hill's implied authorization as manager to make admissions of liability on behalf of defendant, but those interested may consult Shelton v. Wolf Cheese Co., 338 Mo. 1129, 93 S. W. (2d) 947; Rice v. St. Louis, 165 Mo. 636, 65 S. W. 1002 and State ex rel. S. S. Kresge Co. v. Shain, 340 Mo. 145, 101 S. W. (2d) 14. The statements offered were not factual in character. They represented opinions and conclusions not based upon facts within the personal knowledge of the alleged declarant. They related to questions of law and evidenced legal conclusions respecting the matter here in controversy, to wit, the matter of defendant's liability. The statements were not admissible in evidence and were properly excluded. Wright v. Quattrochi, 330 Mo. 173, 49 S. W. (2d) 3, 6; Baker v. Keet-Roundtree Dry Goods Co., 318 Mo. 969, 2 S. W. (2d) 733, 741; Crockett v. Morrison, 11 Mo. 3, 5; Kenney v. J. A. Folger & Co. (Mo. App.), 192 S. W. (2d) 73, 78; Raftery v. Kansas City Gas Co., 237 Mo. App. 427, 169 S. W. (2d) 105, 108; 31 C. J. S. 1025, Sec. 272(c).

█ █ Did the court err in sustaining objections to the argument? Two of defendant's witnesses were cross-examined at some length with reference to having conferred with Miss Beall, an attorney for defendant, and as to having given her written statements within a week or so after plaintiff was injured. Defendant thereupon had the statements identified and offered them in evidence. No error is assigned on the admission of these statements. Each witness testified that, after she had stated the facts to Miss Beall, a statement was prepared and witness read the statement, found it to be correct and signed it. There is some variance between the facts stated in the written statements and the testimony of the respective witnesses. The witnesses were questioned as to some of the facts set forth in the statements, but neither witness was cross-examined with reference to any alleged conflict between her statement and her testimony and no such issue of conflict was presented.

In argument to the jury, counsel for plaintiff said: ''Among those lawyers was Miss Beall. Who is Miss Beall? Mr. Marsalek, rather than produce Miss Beall and put her on the witness stand so that

you can see her, chooses to get up here and say himself what Miss Beall did." Objection was made and sustained and the court instructed the jury to disregard the reference to Miss Beall. Error is assigned on the court's action in sustaining the objection and directing the jury to disregard the argument. Appellant contends that there were a number of facts in the statements contrary to testimony of the witnesses in court; that Miss Beall was under the control of defendant; that plaintiff had no means of knowing what Miss Beall had done in procuring these statements; that defendant failed to produce Miss Beall as a witness in court "to explain and testify as to the circumstances under which she took the statements and as to why the statements conflicted with the testimony of the witnesses"; and that plaintiff's counsel, in his argument to the jury, could properly comment on defendant's failure to produce Miss Beall as a witness.

We are not concerned with the grounds upon which the trial court may have acted, but only as to whether the court ruled erroneously and to the prejudice of appellant. The rule relied upon by appellant is stated in Atkinson v. United Railways Co., 286 Mo. 634, 228 S. W. 483, 485 and in State v. Collins, 350 Mo. 291, 165 S. W. (2d) 647, but it has no application here. Defendant was not required to produce every available witness, and an unfavorable inference may not be drawn where the witnesses produced had equal or superior knowledge to those not produced. "Where it appears that the evidence which was not produced would have been relatively unimportant in the case, either as inferior to that already realized, or else as merely corroborative of, or cumulative to, such evidence, then no unfavorable inference is warranted because of its non-production." Roehl v. Ralph (Mo. App.), 84 S. W. (2d) 405, 413; Miller v. Fleming (Mo. App.), 259 S. W. 139, 141. No issue was presented in this case that authorized or required the production of Miss Beall as a witness. Defendant could not support or bolster the testimony of its own witnesses by hearsay evidence. Ritter v. First National Bank, 87 Mo. 574, 576; Beard v. American Car Co., 63 Mo. App. 382, 391. Under the facts shown by this record no unfavorable inferences were warranted because Miss Beall was not called as a witness. The court did not err in sustaining the objection and directing the jury to disregard the reference to her.

The judgment should be affirmed. It is so ordered. All concur.