**Burr V. TURNER and Virginia Turner (Plaintiffs), Respondents,**

v.

**NORTH AMERICAN VAN LINES, Inc., the Home Insurance Company of New York and Fireman's Fund Insurance Company (Defendants), Appellants.**

Nos. 29358–29360.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1956.

Motion for Rehearing or to Transfer to Supreme Court Denied March 15, 1956.

Willson, Cunningham & McClellan, J. H. Cunningham, Jr., Richard D. Gunn, St. Louis, for North American Van Lines and Home Ins. Co.

La Tourette & Rebman, G. M. Rebman, St. Louis, for Fireman's Fund Ins. Co.

William A. Boles, St. Louis, for respondents.

WOLFE, Commissioner.

This is an action by the owners of some household furniture and like effects to recover for damage to their property while it was in storage and while being transported from storage by a motor truck freight transport company. The defendants are the transit company, an insurer of the goods while in transit, and another insurance company that insured the goods for certain periods of their storage.

There was a judgment in favor of the plaintiffs against defendant North American Van Lines for $357.02 and a judgment for a like amount plus interest and attorney's fees against The Home Insurance Company of New York, the company that insured the goods while in transit, and against the Fireman's Fund Insurance Company in the sum of $1,500, plus penalties for vexatious refusal to pay. All the defendants appealed.

The facts as developed disclose that Burr V. Turner is an officer in the United States Navy. In January of 1952 he was

stationed in Washington, D. C., and resided in Arlington, Virginia. At that time he was ordered to Japan and his wife, who was not to accompany him, planned to go to Tulot, Arkansas, where her mother resided. They were confronted with the problem of moving their furniture from their home in Arlington and decided to store it in a warehouse of the Alpha Van Lines located in nearby Alexandria, Virginia.

On February 23, 1952, the furniture was called for by the driver of an Alpha Van Lines truck and one of its employees prepared an inventory of the goods as they were packed and loaded, noting on the inventory such things as mars and scratches on the various pieces of furniture. The furniture was then taken to the Alpha Van Lines warehouse where it was stored. At the time the plaintiffs thought that they might ship their belongings to Memphis, Tennessee, and they took out a policy of insurance in the sum of $3,000, insuring the property against damage while in transit from Alexandria, Virginia, to Memphis, Tennessee. This policy was issued by defendant Fireman's Fund Insurance Company and it expired on April 23, 1952, while the goods were still in storage in the Alpha Van Lines warehouse. Thereafter the plaintiffs took out another policy with the same company which insured the goods against damage from June 9, 1952, until they were removed from the warehouse by defendant North American Van Lines on November 28, 1952.

During the time of storage the plaintiffs did not see their furniture except on one occasion. This was upon the return of Commander Turner from his overseas assignment. On a trip to Washington in the early part of November, 1952, he went with Mrs. Turner and Mrs. Orme, a friend, to the warehouse where they saw all the furniture packed in a sort of "cubicle" and stacked high. It was dusty and the warehouse was damp. It appeared to Mrs. Orme to have been crammed into a space that was too small, but they observed no damage to the furniture.

Commander Turner's new assignment of duty took him to California and he and his wife decided to ship the furniture to Tulot, Arkansas, and put it in a vacant house next to the house where her mother lived. To accomplish this the defendant North American Van Lines was employed to move the furniture from the warehouse in Alexandria to Tulot, and a policy of insurance was taken out with defendant The Home Insurance Company of New York to cover the goods while in transit from Alexandria to Tulot.

On November 28, 1952, the North American Van Lines loaded the furniture in Alexandria and took it by truck to Tulot. The driver of the van for the North American Van Lines stated by deposition offered by plaintiffs that he remembered calling at the Alpha warehouse for the goods and that the Alpha warehouse was similar to most other warehouses. He said that the furniture was stored in bins that opened onto an aisle. He loaded about 75% of the furniture himself, but on the larger pieces he received help from employees of the warehouse. Quite a bit of the furniture was wrapped in heavy-duty wrapping paper and, as in most warehouses, some pieces were stacked upon others. He took an inventory as he loaded and noted such things as soil, wear and scratches that furniture usually has by way of use, and other damage such as chips. He noticed that a rocking chair was broken and that there was a door off the cabinet. He said that on the way to Tulot the road was rough with snow and ice and that the weather was bad, but he also said that none of the rain or snow reached the goods as the equipment he was driving was good and the furniture protected.

When he arrived at Tulot he was met by Commander Turner and his wife and told to place the furniture in the vacant house. He said that the house was damp. He suggested that it would be well to have a fire. Commander Turner stated that the driver told him that the furniture was in such poor condition in Alexandria that he hesitated to load it, but the driver by dep-

osition stated that he had no recollection of making such a statement.

Commander and Mrs. Turner testified that they saw the North American van unload their furniture at Tulot and they saw a broken bicycle, a broken rocking chair, and some items scratched. They noticed mold on some items and others were not securely fastened in the cartons in which they had been packed. Some of the furniture was wrapped and they did not see its condition. They insisted that the driver of the van note on the inventory: "Shipment not unpacked. Damages noted by shipper include mold on table pads, scratches and dents on some furniture. Some furniture still paper wrapped, so damage not totalled." The van driver also stated that if any damage had occurred during transit he would have noted it.

The day after the delivery of the furniture in Tulot the Turners left for California. During the time they were in California no one had access to the house except Mrs. Turner's mother and brother. The furniture was not touched. Toward the end of January, 1953, Mrs. Turner returned to Tulot and employed the Needles Van Lines to move the furniture to St. Louis. This was done on February 3, 1953.

At that time the driver for Needles Van Lines called for the furniture and he testified that the goods were not placed in the house properly, some pieces being put on top of others, and that he directed Mrs. Turner's attention to some items of damage. He did not make an inventory of the goods as he loaded them, but delivered them to the Fidelity Storage Company in St. Louis where he dictated an inventory to an employee and indicated the condition each item was in at the time he picked it up. The property remained in the Fidelity warehouse until March, 1953, when it was removed to a new home of the plaintiffs in Olivette, in St. Louis County.

Then the plaintiffs for the first time examined the furniture and determined what damage all of it had suffered. They employed a man to refinish quite a few of the major pieces which were scarred and he

testified that his charge for the total work was $2,260.50.

Both Commander Turner and Mrs. Turner stated that the condition of their furniture was good with some noted exceptions at the time it was taken from their home in Arlington. They told of the condition in which they found it at the time they examined it in March of 1953, but both stated that they did not know when or where the damage to it had occurred.

The appealing defendants each contend that the court erred in refusing to direct a verdict for them. The basis of the contention is that the evidence fails to show when the damage occurred and that failing in this respect there is nothing upon which the jury could conclude that the cause of the damage occurred when in the control of any one of the defendants.

The evidence shows that the first movement of the goods took place when they were loaded by the Alpha Van Lines and taken from Arlington to Alexandria. The Alpha Van Lines are not defendants in this suit and the first insurance policy issued by defendant Fireman's Fund Insurance Company only covered the goods while in Alexandria and in transit to Memphis, Tennessee, where they were never taken. Thus we have one move where damage to the furniture may have occurred without liability on the part of any defendant.

We next have the period of storage. During some of this time the first policy of the Fireman's Fund Insurance Company was in force. This first policy however expired on April 23, 1952, and the second policy by the same company was not issued until June 9, 1952. There was consequently a period of over a month when there was no insurance on the furniture. If the damage occurred during this time none of the defendants would be liable, for, as stated, the Alpha Van Lines which operated the warehouse was not made a party defendant.

The sequence of the moving thereafter was from Alexandria to Tulot and then by the Needles Van Lines to storage in

St. Louis and from storage to the plaintiffs' home in Olivette. If we eliminate from consideration the fact that some damage may have been inflicted by the Needles Van Lines on the trip to St. Louis, or in the Fidelity warehouse, neither of which are defendants here; and if we further assume that at some time during the storage of the furniture in Alexandria while the policies of defendant Fireman's Fund Insurance Company were in force, and at some time during transit to Tulot when defendant North American Van Lines would have been liable for the damage, the damage occurred; we have a situation where one defendant may have caused all or part of the damage or all or part of it may have been caused by the Alpha Van Lines while insured by another defendant. Without considering all of the "ifs" necessary to arrive at this point, we still have no evidence from which it could be determined that certain pieces were damaged by the Alpha Van Lines and certain pieces were damaged by the North American Van Lines.

There is no way to place the blame. The cause of the damage may have occurred when none was liable or it may have been caused when either was liable. It is a rule that when the evidence shows that the occurrence, which gave rise to the injury complained of, may have resulted from two or more causes, in order to hold a defendant liable the plaintiff must have substantial evidence tending to show that the cause for which the defendant would be liable was the actual cause of the occurrence. Cole v. Uhlmann Grain Co., 340 Mo. 277, 100 S.W.2d 311, loc. cit. 317; Waldron v. Skelly Oil Co., 363 Mo. 1146, 257 S.W.2d 615; Raftery v. Kansas City Gas Co., 237 Mo.App. 427, 169 S.W.2d 105.

The evidence is therefore not sufficient to support a judgment against any of the named defendants. Although the plaintiffs urge us to indulge them with all reasonable favorable inferences that may be drawn from the evidence, which we do, we find none that will aid them. There is no evidence from which it may be determined who was in possession of the furniture when it was damaged. Any conclusion as to when it happened would be a conjecture and not an inference. This is not sufficient. Waldron v. Skelly Oil Co., supra; Van Brock v. First Nat. Bank in St. Louis, 349 Mo. 425, 161 S.W.2d 258.

For the reasons stated, the plaintiffs' case was not supported by substantial evidence and the Commissioner recommends that the judgment be reversed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly reversed.

ANDERSON, P. J., MATTHES, J., and SAM C. BLAIR, Special Judge, concur.