Delmar H. YAMNITZ,
Plaintiff-Appellant-Respondent,

v.

POLYTECH, INC.,
Defendant-Respondent-Appellant.

Nos. 39564, 39619.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 21, 1979.

Prudence L. Fink, Daniel M. Buescher, Union, for plaintiff-appellant-respondent.

Paul H. Schramm, M. Harvey Pines, Schramm, Pines & Marshall, Clayton, for defendant-respondent-appellant.

STEPHAN, Presiding Judge.

On October 1, 1973, plaintiff Delmar Yamnitz, d/b/a Yamnitz Construction Company, and defendant Polytech, Inc.,[1] entered into a written contract whereby plaintiff was to renovate defendant's fire-damaged plastics factory in Owensville, Missouri. The contract price was $87,500. Work had actually begun on September 27, 1973 and was completed by January 19, 1974. In addition to the construction required by the terms of the contract, plaintiff provided a number of "extras" at the direction of defendant's president, Terrence D. McGowan. We reverse and remand for a new trial.

The primary dispute between the parties centers around the concrete floor poured by plaintiff in a section of the factory designated "concrete area one." The contract specifications provided that the floor in that area was to be level to within one-eighth of an inch in ten feet, so as to allow air pallets to operate efficiently in the area. Plaintiff was fully aware of the reason for the requirement of the extremely smooth, level finish. As originally graded, however, the floor admittedly did not comply with the specifications. It contained several undulations and a pitch to facilitate drainage. Plaintiff proposed to tear out the floor and re-pour it, but on the two occasions on which he sent employees to the factory to begin that operation, they were denied admittance. After exploring several alternative solutions to the problem, defendant contracted the C. Sansone Concrete Contractors, Inc., to pour a two-inch concrete "cap" over the original floor. The work, for which Sansone was paid $10,360, pro-

---

1. Because cross-appeals have been filed in this suit, we will refer to the parties as they appeared in the court below.

duced a floor which satisfied defendant's requirements.[2]

Upon receipt of plaintiff's final bill for $19,893.88 (which represented the final installment due under the contract plus $3,393.88 for extras), defendant tendered plaintiff a check in the amount of $3,594.17. Defendant contended that one item termed an extra by plaintiff was in fact called for by the contract; as further offsets, defendant listed, inter alia, the cost of repairing the floor in concrete area one and property damage and product loss caused by plaintiff's employees in the course of the construction in defendant's plant. The check bore a notation indicating that it constituted full and complete payment to plaintiff for labor and materials provided under the contract; the check was consequently not cashed by plaintiff.

On December 17, 1974, Yamnitz filed a two-count petition in the Gasconade County Circuit Court. Count I, alleging breach of contract, sought the imposition of a mechanic's lien for damages of $19,393.88 plus interest as the unpaid balance due under the contract and the amount owed for the extras. Count II sought the recovery in quantum meruit of $3,350 for the construction of a temporary wall and for 119¼ yards of concrete which was furnished by plaintiff and used by Sansone in capping concrete area one. Defendant filed a counterclaim for $20,000, alleging non-compliance with the contract specifications in the pouring of the floor, in installation of the steel substructure and in construction of the roof; defendant also alleged that an underground storage tank had been damaged by plaintiff's employees. Defendant's motion to amend its pleadings, which was filed three weeks prior to trial and which alleged additional elements of damage, was denied. Plaintiff's amended reply, filed after the close of the evidence by leave of the court, alleged that he was prevented by defendant from performing his duties under the contract. The jury returned verdicts for plaintiff on both counts of his petition and against defendant on its counterclaim. By agreement of the parties, the issue of the mechanic's lien was submitted to the court, which dismissed that portion of the petition on the ground that it failed to state a claim by omitting the "ultimate facts showing the timely filing of the lien statement." Plaintiff has appealed the order dismissing his claim for a lien. Defendant has appealed the judgments for plaintiff on his petition ($19,383.88 plus interest on Count I and $2,380 plus interest on Count II) and the judgment against defendant on its counterclaim. The appeals have been consolidated.

We agree with defendant's contention that the use of plaintiff's verdict-directing instruction on Count I mandates reversal in this case. That instruction, not found in MAI, reads as follows:

"Your verdict must be for Plaintiff Delmar Yamnitz on Count I of his Petition if you believe,

First, that Plaintiff and Defendant entered into the construction contract mentioned in the evidence, and

Second, that Plaintiff substantially performed his part of the contract or was prevented from doing so by the actions of defendant or its agents, and

Third, that Defendant has failed or refused to pay the entire contract price to Plaintiff, and

Fourth, that Plaintiff was thereby damaged."

The use of this instruction was erroneous in this case because it submitted the issue of prevention of performance to the jury though such submission was not justified by the evidence adduced at trial. It is undisputed that the floor in at least part of concrete area one, as originally finished, was not in compliance with the strict requirements of the contract; and that plaintiff made an attempt to remedy the situation but was prevented from doing so by defendant. However, defendant contends, and plaintiff denies, that the contract itself

---

2. McGowan apparently rejected the idea of tearing out the original floor because he felt it would be too time-consuming. Plaintiff has not challenged the reasonableness of defendant's choice of remedy.

gave defendant the option of making its own provisions for repair or replacement of defective work at plaintiff's expense. The disputed provision of the contract is article 13, the contractor's warranty, which we set out in part:

> "Contractor warrants that he shall use sound engineering and construction principles and practices, in the performance of the Work and that he shall apply to the Work that degree of skill, care, judgment, and supervision necessary to assure that the Work shall be of highest quality, with workmanship proper (sic) fit, suitable and sufficient for the purpose contemplated and in accordance with the best trade practices. Contractor further warrants that the Work shall fulfill the terms of all special guaranties established by the contract and that the Work shall be free from defects due to faulty materials, equipment or workmanship *until the expiration of one year from the date of final payment under the Contract* or such longer period as may be either provided in the Contract or as may be available to Contractor without additional cost to Polytech. In the event that any of the aforesaid warranties are not fulfilled, Contractor guarantees that he shall promptly reimburse Polytech for its cost in making suitable repairs, or replacements or, at Polytech's option, promptly make suitable repairs or replacements at his own expense." (Emphasis added.)

It is plaintiff's contention that the above warranty was to become effective only upon the date of final payment and that it therefore did not operate to give defendant the option defendant claims because defendant failed to tender the balance of the full contract price in what it offered plaintiff as a final payment. · We do not agree. In construing a provision of a contract, the courts are to determine the intent of the parties from the language of the contract itself, reading the contract as a whole and attempting to give effect to every part thereof. *Celatron, Inc. v. Cavic Engineering Co.*, 432 S.W.2d 794, 798 (Mo.App.1968); *Brackett v. Easton Boot and Shoe Co.*, 388 S.W.2d 842, 848 (Mo.1965). In that light,

we note that the disputed warranty is immediately preceded in the contract by article 12, which provides that: "Polytech may withhold payment to Contractor to such extent as may be necessary to protect Polytech from loss on account of: . . . A breach by Contractor of any term, condition or provision of the Contract." Plaintiff's construction of article 13 would require defendant to pay the full contract price before it enjoyed the benefit of the warranty against defective workmanship and materials. This would totally negate defendant's expressly given right under the contract to withhold payment for those same defects. The only way to harmonize articles 12 and 13 is to construe the warranty as fixing only a final, outside time limitation beyond which defendant cannot claim that any unsatisfactory conditions in the rebuilt factory were the result of faulty workmanship or material. There is nothing in the contract to support the contention that the warranty, and defendant's optional remedy thereunder, did not take effect at the inception of construction. Plaintiff, in article 13, made a number of warranties, only one of which included a time limitation. The warranty to provide workmanship "suitable and sufficient for the purpose contemplated" was unrestricted in any manner. Defendant received the option discussed "[i]n the event that any of the aforesaid warranties [were] not fulfilled." Under these specific circumstances, it was therefore erroneous to instruct the jury to consider the issue of prevention of performance in connection with Count I of plaintiff's petition.

■ Defendant contends that the verdict director was further defective in that it made no mention of the extras, thus permitting the jury to render a verdict for plaintiff on Count I merely by finding that plaintiff had substantially performed the duties imposed by the written contract (or had been prevented from doing so by defendant). We agree with defendant that MAI 26.06 is generally the proper verdict director to be used when, as here, the terms of a bilateral contract are in dispute. How-

ever, see *Forsythe v. Starnes*, 554 S.W.2d 100 (Mo.App.1977). In that case, plaintiff contractor also sought recovery under a written construction contract and an oral agreement for extras, many of which were disputed by defendants; plaintiff submitted a verdict director similar to that used in the instant case.[3] The court, citing *Varn Company v. Hamiltonian Federal Savings and Loan Association*, 488 S.W.2d 649, 651[3] (Mo.1973), apparently agreed in principal that MAI 26.06 was the proper verdict director in that situation; it held, however, that because of the number of extras disputed by the parties, 26.06 could not be used without violating the directive of Rule 70.-02(a) that instructions "shall not submit to the jury or require findings of detailed evidentiary facts." *Forsythe*, supra, 106. Because of the complexity of the instant case, we believe that reasoning apposite here. If, in accord with the evidence adduced on retrial, the issue of extras cannot be submitted under MAI 26.06 without requiring such detailed findings, an instruction in the form given would be appropriate. We believe that if the first paragraph of the instruction were modified to indicate that the "contract mentioned in the evidence" referred to the total agreement between the parties, oral as well as written, defendant's objections to that instruction should be minimized.

■■ We also believe, as defendant contends, that the phrase "substantially performed," found in the second paragraph of plaintiff's verdict director, should properly be defined in that instruction on retrial. Technical, legal terms used in instructions must be defined therein. *Koehler v. Burlington Northern, Inc.*, 573 S.W.2d 938, 944 (Mo.App.1978). "Substantially performed" has been held to be such a term of art. *Forsythe*, supra, 107–108.

Defendant next alleges error in the use of plaintiff's measure-of-damages instruction, a modification of MAI 4.05. Plaintiff's instruction directed the jury:

"If you find the issues in favor of Plaintiff Delmar Yamnitz upon Count I of his petition, then you must award him such sum as you believe he and Defendant agreed upon as the contract price plus extras together with 6% interest per annum thereon from April 18, 1974, minus the amount paid on the contract by Defendant."

Defendant contends that this instruction permitted the jury to return a verdict for plaintiff for the full contract price (without regard to defendant's cost to repair work not in compliance with the contract) if it found for him on Count I. Defendant claims that MAI 4.01 was the proper instruction in this case.[4]

We do not agree. In the *Forsythe* case, supra, plaintiff contractor alleged damages similar to those claimed by the instant plaintiff; defendants also counterclaimed for defective construction. The damage instruction provided:

"If you find in favor of Plaintiff, then you must award him such sum as you believe is called for by the Contract, less payment, together with six percent (6%) interest thereon from January 1, 1973, less such sums necessary to correct any defects in Plaintiff's performance of the Contract."

The court there found the instruction improper only because of the "tail" submitting

---

**3.** "Your verdict must be for Plaintiff, on Plaintiff's claim, if you believe:

First: Plaintiff, in good faith, substantially performed the work required of him by the Contract mentioned in evidence, and

Second: Defendants have not paid the amount required by said Contract.

unless you believe that Plaintiff is not entitled to recover by reason of Instruction No. *4*.

The term 'substantially performed' as is used in this Instruction, means that the construction had progressed to the point that the house could be put to the use for which it was intended." Id., 105.

**4.** "MAI 4.01 Measure of Damages—Personal and Property

If you find the issues in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained [and is reasonably certain to sustain in the future] as a direct result of the occurrence mentioned in the evidence."

the issue of setoff against the contract price due to defects in the construction. *Forsythe*, supra, 108–109. The court was concerned about the possibility of confusing the jury because the issue of setoff and recoupment was also submitted to the jury in defendant's counterclaim and the "tail" in plaintiff's damage instruction made no cross-reference to that counterclaim. Indeed, because the jury was to return only one verdict, there was a distinct possibility of a double setoff. No such problems exist in the instant case. In this case, the jury was to return separate verdicts on plaintiff's claims and defendant's counterclaim. Any setoff due to defendant against the contract price would be granted under defendant's counterclaim.

■ Contrary to defendant's reading of *Forsythe*, the court, citing *North County School District R–1 v. Fidelity & Deposit Co.*, 539 S.W.2d 469, 480 (Mo.App.1976), merely held 4.01 to be appropriate in submitting defendant's counterclaim to the jury in that case. *Forsythe*, supra, 109[14].[5] It is obvious, however, that opposing parties in a breach of contract action such as *Forsythe* (and the instant case) calculate their damages in different fashion. It therefore does not necessarily follow that the same instruction is appropriate for both contractor and purchaser seeking damages in such a case. A plaintiff contractor, seeking the unpaid balance due under the contract (with or without extras), can generally assess his alleged damages with much more precision than can the counterclaiming defendant purchaser. MAI 4.05, as modified, allows that plaintiff to preserve that clarity in the presentation of the issue of damages to the jury. We therefore believe it a superior instruction to the unfocused 4.01 in this situation. MAI 4.05, as here modified, presented the damage issue simply and impartially in accord with Rule 70.02(e).

Defendant contends that the trial court further erred in excluding certain testimony of Joyce McGowan, wife of Terrence D. McGowan and corporate secretary of defendant Polytech. After plaintiff's objection to the testimony was sustained on the grounds that it would constitute hearsay evidence, defendant offered to prove that Mrs. McGowan was told by Everett Nowack, one of plaintiff's foremen on the Polytech job, that the floor in concrete area one was one of the worst concrete pouring jobs he had ever seen, and that the floor probably would not have been so bad had it been poured while Yamnitz or he, Nowack, were present on the job site.

The parties are in agreement that declarations or statements of an employee or agent made in the course of the ordinary business of his principal, and made within the scope of the agent's authority, are admissible against the principal as exceptions to the hearsay rule. See, e. g., *State ex rel. State Highway Commission v. Baker*, 505 S.W.2d 433, 436 (Mo.App.1974). They are in dispute over the issue of Nowack's authority to make the statement to Mrs. McGowan. Plaintiff further contends that the statement was inadmissible because it merely constituted the opinion of the declarant.

■ In regard to the latter argument, we note that the Supreme Court acknowledged in *Carpenter v. Davis*, 435 S.W.2d 382 (Mo. banc 1968), that an admission of a party opponent is not inadmissible merely because it constitutes an expression of opinion. Id., 384. See also *Wills v. Townes Cadillac-Oldsmobile, Inc.*, 490 S.W.2d 257, 260[4] (Mo.1973); *Grodsky v. Consolidated Bag Co.*, 324 Mo. 1067, 26 S.W.2d 618, 620–621 (1930). Plaintiff cites the cases *Wilson v. Miss Hulling's Cafeterias, Inc.*, 360 Mo. 559, 229 S.W.2d 556 (1950), and *Raftery v. Kansas City Gas Co.*, 237 Mo.App. 427, 169 S.W.2d 105 (1943), in support of his contention that Nowack's opinion of the quality of the work was not admissible through Mrs. McGowan's testimony. We believe, however, that *Wilson* merely held the opinion testimony there in question inadmissible because it was opinion based on matters be-

---

5. See, however, this court's discussion of the use of MAI 4.02 rather than 4.01 in a similar contract action in *Sands v. R. G. McKelvey Building Co.*, 571 S.W.2d 726, 730–732 (Mo. App.1978).

yond the scope of the personal knowledge and understanding of the declarant. *Wilson*, supra, 229 S.W.2d 561. The proffered opinion of plaintiff's job foreman, a man of considerable construction experience, cannot be said to be similarly unfounded. The *Raftery* case, supra, 169 S.W.2d 108, appears to be contra our ruling on this point, but to the extent that it is inconsistent with the Supreme Court's holding in *Carpenter*, supra, it should not be followed.

 In regard to Nowack's authority to make the statement in question, we note that the record is rather limited in its description of Nowack's duties as foreman on the Polytech job. Nowack testified that he oversaw the job in the absence of plaintiff and another Yamnitz employee, Don Souders. Plaintiff described Nowack and Souders as his "main job foremen," the men who were "primarily responsible for the job" and who would "speak for [him] in [his] absence." Because the party offering evidence under this exception to the hearsay rule has the burden of proving the fact and scope of the agency of the declarant, *State ex rel. State Highway Commission v. Baker*, supra, 436, and because the record is void of testimony regarding Yamnitz' presence or absence at the construction site at the time the statement was allegedly made, we believe that the trial court correctly decided this point. Defendant will have an opportunity to correct that defect on retrial. It appears that Nowack's statement to Mrs. McGowan was made as an attempt to assuage a disgruntled customer. It would therefore further behoove defendant, if on retrial it is able to prove Yamnitz' absence, to develop whether Nowack's duties of "overseeing" the job and "speaking for" plaintiff ordinarily included a certain amount of customer relations or whether his duties were strictly limited to supervision of plaintiff's employees.

Defendant also alleges error in the court's denial of its motion, filed three weeks before the date of trial, to amend its answer and counterclaim. The amendment to the counterclaim listed, as additional elements of damage, lost profits due to delayed completion of construction, and increased production costs due to the reduced efficiency of defendant's business operations caused by the non-complying construction; the counterclaim included a prayer for $50,000. Defendant's motion contended that the new elements of damage were not apparent to it at the time it had filed its last pleading.

 The denial of a motion to amend a pleading is a matter within the discretion of the trial court. The court's ruling in that regard is not to be overturned unless that discretion is clearly abused. *Kallenbach v. Varner*, 502 S.W.2d 446, 448 (Mo.App.1973). That principle applies to the amendment of the prayer for damages. *Conchola v. Kraft*, 575 S.W.2d 792, 794 (Mo.App.1978).

 In this case, the trial court found that construction was completed on January 19, 1974; defendant's first amended counterclaim, on which the case was tried, was filed on June 12, 1975; defendant's motion to amend was not filed until February 28, 1977, three weeks before the trial date. Under these circumstances we cannot find the trial court guilty of a clear abuse of its discretion. On general remand, amendments of pleadings are permissible and motions to amend are directed to the sound discretion of the trial court. *Kestner v. Jakobe*, 446 S.W.2d 188, 196 (Mo.App. 1969). In view of our disposition of this case, defendant will undoubtedly have an opportunity to seek to amend in more timely fashion than it did prior to the first trial.

We have not discussed those of defendant's points which involve issues not likely to arise on retrial or which have been ruled indirectly by our holdings herein.

On his appeal, plaintiff contends that the court erred in denying his petition for the mechanic's lien he sought in Count I. (As noted, supra, the issue of the lien was separated from the rest of the suit and was submitted to the court sitting without a jury.) The court held the petition insufficient to state a claim for a mechanic's lien because it failed "to allege ultimate facts showing the timely filing of the lien state-

ment with the Circuit Clerk." Section 429.-180, RSMo 1969, provides that the petition for a mechanic's lien "shall allege the facts necessary for securing a lien" under Chapter 429. One such requirement, found in § 429.080, is that an original contractor such as plaintiff must file a just and true account of his demand within six months after the indebtedness accrued, i. e., the day on which the last work was done. *J. R. Meade Co. v. Forward Construction Co.*, 526 S.W.2d 21, 28 (Mo.App.1975). Plaintiff's petition alleged that construction was completed "on or about _____ 1974", that final written demand for payment was made of defendant on April 18, 1974, and that the lien statement was filed with the clerk of the Gasconade County Circuit Court on June 21, 1974.[6]

■■■■■ Because our statutes creating mechanic's liens are remedial in nature, they are to be construed as favorably to materialmen as their terms permit. *R. L. Sweet Lumber Co. v. E. L. Lane, Inc.*, 513 S.W.2d 365, 370–371 (Mo. banc 1974). In determining whether a petition states a claim, that petition is to be favorably construed and given "the benefit of every reasonable and fair intendment." *Laclede Gas Co. v. Hampton Speedway Co.*, 520 S.W.2d 625, 629–630 (Mo.App.1975). In light of the above principles, we believe that plaintiff's petition by necessary implication stated facts sufficient to satisfy § 429.180. Plaintiff apparently left the exact date of completion blank on the petition due to some uncertainty on the question, intending but failing to supply it at a later time.[7] However, any date in 1974 before June 21, 1974, the date on which plaintiff filed the lien, necessarily was within six months of that filing date, as required by § 429.080.

Moreover, as indicated, amendments of pleadings are permissible on remand, *Kest-*

*ner v. Jakobe*, supra, and we perceive no prejudice to defendant's rights to permit plaintiff to insert in the petition the day and month on which it alleges the indebtedness accrued.

Reversed and remanded for retrial consistent with this opinion.

KELLY and STEWART, JJ., concur.

---

6. The petition, as reproduced in the transcript approved by counsel for both parties, actually contains an allegation that the work was finished on or about January 19, 1974. However, from a motion to dismiss the petition to enforce the mechanic's lien and arguments presented thereon immediately prior to trial as well as the trial court's refusal to permit plaintiff to amend, we conclude that the court reporter erroneously included the date in the petition. The matter was so treated in the briefs and is so treated herein.

7. We note that, although the court found the final date of construction to be January 19, 1974, considerable difference of opinion on that point is evidenced in the transcript.