David Clayton FLANNERY and Dorothy Knight, Plaintiffs-Appellants,

v.

Fred Alden WHITAKER, Defendant-Respondent.

No. 11448.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 6, 1981.

Benjamin J. Francka, Springfield, for plaintiffs-appellants.

Dale L. Davis, Bussell, Hough & O'Neal, Springfield, for defendant-respondent.

PREWITT, Presiding Judge.

Plaintiff David Clayton Flannery (David), while crossing Highway 76 in Taney County on foot, was struck by a pickup truck operated by defendant. At that time David was 18 years of age. David and his mother, Dorothy Knight, brought this action for damages. A jury returned a verdict in favor of defendant and judgment was entered in accordance with that verdict. Plaintiffs contend that the trial court erred in giving an instruction submitting contributory negligence by David in failing to keep a careful lookout. Plaintiffs claim that the instruction was improper because there was no evidence that David failed to keep a lookout and that whether or not David kept a careful lookout "did not cause or contribute to cause the accident" because he had crossed defendant's proper lane of travel on the highway and "was in a position of safety at the time he was struck".

At the scene of the collision Highway 76 is a two lane blacktop road approximately 20 to 22 feet wide, running east and west. David was working with a hay crew hauling hay from a field north of Highway 76 to a barn south of the highway. The crew unloaded a truckload of hay at the barn and was returning to the hayfield to get another load. They approached the highway in a truck headed north and saw that a gate to the field north of the highway had been closed. Two members of the hay crew were in the cab of the truck and three, including David, were on the truck bed. The truck stopped on the south side of the highway across from the gate. Testimony on the distance from the front of the truck when it stopped to the south edge of the highway varied from three to ten feet. David got off on the east side of the truck and began "jogging" north across the highway to open the gate to the hayfield. David does not remember the collision or any of the events relating to it. Other members of the hay

crew testified that as their truck stopped they saw defendant's vehicle coming from the west approximately 100 yards away "astraddle" the center line moving at a speed of from 40 to 50 miles an hour. There was evidence that from where the hay truck was parked it was possible to see vehicles as far as 150 yards west on the highway. David crossed the eastbound lane of the highway and when he was in the westbound lane of travel, he was struck by the left corner of defendant's pickup, the impact breaking the left headlight. There was testimony that he was struck when two or three feet north of the center line and also there was testimony that he was halfway across the westbound lane of travel when struck. The hay crew members said that defendant's vehicle continued to straddle the center line from the time members of the hay crew first saw it until David was struck. This incident occurred between 7:00 p. m. and 7:30 p. m. on June 1, 1975. The pavement was dry at the time of the incident. There was testimony that the sun did not create "any difficulty in seeing the Whitaker pickup truck on down the road" and that before being struck David had good eyesight.

Defendant testified he saw the hay truck when he was 100 yards west of it. He was traveling between 40 and 45 miles an hour at that point and when he saw it took his foot off the accelerator, thinking that the truck might pull in front of him. When he was about 100 feet from the hay truck he saw the driver of the truck look his way, and then he put his foot back on the accelerator and started gaining speed. He says that as he approached the truck his vehicle was entirely in the eastbound lane of travel. When his pickup was approximately 10 feet west of the driveway or the hay truck, he saw David on the edge of the blacktop "moving pretty peart", about twice as fast as a walk. He "whipped" his pickup to the left, thinking he could miss him, then saw he couldn't, and turned back to the right and "that's when I hit him."

There was no direct evidence that David did not look toward defendant. He was not

seen looking west; apparently none of the witnesses watched him continually from the time he got off the truck until he started crossing the highway. Plaintiffs contend in their brief that David's "obvious unconcern about danger" could have been because he did not see the vehicle approaching, or because he saw it approaching, "and made the judgment that he could cross the East bound lane in safety."

■ It is not necessary in order to make a submissible case of failure to keep a lookout that there be direct evidence that the party was not looking. *Watterson v. Portas*, 466 S.W.2d 129, 131 (Mo.App.1971). David had an obligation not only to look but to look carefully. "Failure to keep a careful lookout" includes a situation where one sees an automobile but does not look with sufficient care to appreciate and apprehend the danger if one proceeds into the street. *Young v. Grotsky*, 459 S.W.2d 306, 309–310 (Mo.1970). In determining whether the evidence supported the instruction, we view the evidence and all reasonable inferences to be drawn from it from a standpoint most favorable to the party tendering the instruction. *Williams v. Christian*, 520 S.W.2d 139, 141 (Mo.App.1974). Proceeding across the highway, knowing that a vehicle was approaching in such close proximity, would not be normal conduct and leads us to conclude that the jury could have found that David did not look toward defendant, or if he looked, did not look carefully.

Plaintiffs also contend that even if David did not keep a careful lookout, that failure did not cause or contribute to cause the accident "because he had crossed Defendant's lane of traffic" and was in a "place of safety when he was struck." They contend that David "had no reason to anticipate that the Defendant would drive into the north side of the highway." We disagree. A person crossing a roadway on foot so close to an approaching vehicle should anticipate that the driver may swerve his vehicle away from the direction where the pedestrian came. It would be too much to expect that a driver in such a situation could always determine exactly where the pedestrian would be when their paths would cross. Defendant testified he was in his proper lane but partially moved out of it in an attempt to avoid David. It is foreseeable that under such circumstances a driver might swerve his vehicle, although hindsight could reveal it to be an unnecessary precaution. In this situation it could have been reasonably anticipated that defendant might move his vehicle from his lane in an effort to avoid David. Two feet into the westbound lane of traffic was obviously not a "place of safety". The jury would have been justified in finding that David failed to keep a careful lookout and that this failure caused or contributed to cause the collision.

The judgment is affirmed.

HOGAN, BILLINGS and MAUS, JJ., concur.

ALDEN A. STOCKARD, Special Judge, concurs.