Lucille SAMNEE, Plaintiff-Respondent,

v.

HOME SERVICE PROPANE GAS COMPANY, Defendant-Appellant.

No. 42035.

Missouri Court of Appeals, Eastern District, Division Two.

April 14, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 15, 1981.

Application to Transfer Denied July 14, 1981.

Ronald C. Willenbrock, Amelung, Wulff & Willenbroch, St. Louis, for defendant-appellant.

Deebe, DeStefano, Sauter & Herd, James B. Herd, St. Louis, for plaintiff-respondent.

GUNN, Judge.

The husband of plaintiff-respondent was killed as a result of smoke inhalation from an explosion and fire in his home. Suit was brought against defendant-appellant who serviced and supplied propane gas and appliances to the home. Plaintiff presented evidence; defendant presented none, choosing to risk all on its motion for directed verdict which was overruled. The jury returned a $300,000 verdict in favor of plaintiff.

Defendant's lone point preserved for review alleges that plaintiff failed to make a submissible case and thus the trial court

erred in overruling defendant's motions for directed verdict and judgment N.O.V. Defendant also has raised four points dealing with alleged instructional error. By disdaining to set forth the language of the challenged instructions anywhere in its brief, defendant is in gross violation of Rule 84.04(e) and has preserved nothing for review relating to instructional error. *Sewell v. M.F.A. Mutual Insurance Co.*, 597 S.W.2d 284, 290 (Mo.App.1980); *East v. Landmark Central Bank & Trust Co.*, 585 S.W.2d 222, 225 (Mo.App.1979). However, serendipity graces defendant in that its point that a directed verdict should have been given is viable and meritorious. We are therefore constrained to reverse the judgment.

In viewing the evidence in the light most favorable to plaintiff, we find that she and her husband, the decedent, lived in a rented duplex in Barnhart. Heat for the premises was provided by two used propane gas space heaters which had been purchased by the decedent and installed by the defendant on September 12, 1975. On the same date, defendant, a propane gas supplier, also connected the two space heaters to a 500 gallon storage tank, which it had delivered the previous month, containing 275 gallons of propane. After connecting the heaters to the supply lines, defendant's employees applied a liquid leak finder to the fittings to determine whether there were any leaks at connection points of the heaters to the propane supply lines. Pilot lights for the two heaters were lighted and adjusted. Before leaving, defendant's employees suggested to plaintiff that one of the space heaters was equipped to accommodate a thermostat, and she indicated that she would like to have one installed. On October 8, 1975, defendant's employees returned to install a thermostat. There was no manipulation of the propane distribution system at that time. From its initial connection to the propane supply on September 12, 1975, to October 27, 1975, the kitchen heater was turned on twice for brief periods. The other heater was not used.

On October 27, 1975, at about 4:00 a. m., while plaintiff was away visiting her daughter, an enormous fulmination shook her home absolutely destroying it from the floor up. The decedent was in the house at the time and his body was later found there. According to plaintiff's medical expert, death was caused by smoke inhalation from a fire rather than the explosion. The autopsy revealed a blood alcohol level of 200 mg. percent, with the medical examiner's conclusion that decedent was under the influence of alcohol at the time of death. A gas flame was observed to be shooting six to eight feet skyward from the connection where the kitchen stove had formerly been. A state propane gas inspector who investigated the incident and testified for plaintiff was unable to determine the cause of the explosion or fire.[1] The propane was tested for odorization and was found to comply with state standards. State fire officials' investigation disclosed "no violation of the safety standards or any violation of the materials involved in the installation". Supply lines from the propane tank for the heaters lay under the floor of the house within a three foot crawl space beneath the floor and were readily visible for inspection. The floor of plaintiff's house had been left completely intact after the explosion. It was the only part of the house which had not been disturbed. The day after the explosion, the state propane gas inspector went beneath the floor of the house into the crawl space and inspected the complete length of supply line, finding no defects. On March 22, 1976, nearly six months after the fire and explosion, a photographer for plaintiff's lawyer observed two splits in the copper supply lines under the floor just beneath the kitchen area.

Plaintiff based her cause of action on the specific acts of negligence that defendant had permitted propane gas to leak from the system, failed to properly inspect the sys-

---

1. Q. [Plaintiff's attorney] Am I clear that you are telling us that you don't know what caused the explosion? Is that your testimony?

A. [State propane inspector] Yes sir; it is.

tem, warn of the leaks and accumulation of the gas, and failed to odorize the propane gas. (The record absolutely fails to sustain this latter point.) The primary basis for plaintiff's claim of negligence is defendant's employees' failure to utilize a pressure reading device known as a manometer to determine if there were leaks in the system after installing the heaters; that as 75 gallons of propane were gone from the supply tank either—as put by plaintiff—through use, leak or explosion, there must have been a leak in the system.

With regard to the use or non-use of the manometer, defendant's manager, called as a witness by plaintiff, testified that its use was standard procedure as a backup to liquid leak finder in testing for leaks; that it was standard equipment for its employees in testing a system such as plaintiff's. The only evidence that a manometer was not utilized came from plaintiff who testified that she did not see one applied on either of the stoves as defendant's employees made the installation. But that bit of testimony does not signify it was not used elsewhere. We do not find that such testimony establishes anything—whether or not a manometer was used to test the system for leaks. The evidence is quite positive, though, that defendant considered its use important. But that is not defendant's burden in this case.

To make a submissible case, plaintiff must present evidence that the alleged negligence proximately caused the injury. The keystone to plaintiff's case as stated in her brief is that defendant "alone had the opportunity (and obligation) to discover the source of leakage which ultimately claimed the decedent's life". But that presumes a leak was somewhat permitted to exist by defendant's fault, whereas the evidence does not disclose the cause of the explosion or that any of defendant's actions had any causal connection with it.

There is an abundance of law on the issue presented, and to her misfortune, it is all deleterious to plaintiff's case. For example, *Fields v. Missouri Power & Light Co.,* 374 S.W.2d 17, 22–23 (Mo.1963), an exhaus-tively researched opinion, sets forth the law regarding a natural gas supplier's liability for injuries resulting from leaks:

A supplier or distributor of natural gas, such as Mo.P. & L., is not an insurer as to injuries resulting from leaks or other defects in gas distributing systems not owned by it or under its control. [citing cases] However, as a general rule, it may be guilty of negligence if a leak or other defect in the pipes or an appliance of a customer causes injuries to persons or property, provided the supplier or distributor has sufficient notice of such leak or defect, and having such notice (a) negligently inspects or negligently repairs; (b) agrees and assumes to inspect and repair, and then fails to do so; (c) refuses to inspect and repair knowing a dangerous condition exists, and with such knowledge fails to shut off its gas until the owner can have his defective pipes or appliance properly repaired.

*Barrickman v. National Utilities Co.,* 191 S.W.2d 265, 268 (Mo.App.1945), states:

It is also the rule that ordinarily a gas company is under no duty or obligation to inspect pipes and appliances in a house which does not belong to it, and is not ordinarily liable for injuries which may have resulted from a defect in the house pipes or appliances unless some causal connection is shown between some proven defect and some negligence of the gas company.

*Niswander v. Kansas City Gas Co.,* 181 S.W.2d 165, 167 (Mo.App.1944), is congruent with *Barrickman* in inditing:

The mere fact that there was an explosion does not make out a prima facie case, or raise a presumption of negligence, under the res ipsa loquitur theory. Nor does the mere fact of the presence of gas in the oven raise the presumption, but something in addition to the explosion must have been shown, that is, something *causing the explosion* and that it occurred under such circumstances where such an explosion does not ordinarily occur if proper precautions are taken, or where the situation excludes everything but

negligence of defendant. (original emphasis)

To the same effect in correctly interpreting Missouri law are *Gas Service Co. v. London & Lancashire Insurance Co.,* 188 F.2d 404, 410 (8th Cir. 1951); *Gas Service Co. v. Payton,* 180 F.2d 505, 508 (8th Cir. 1950); *Skelly Oil Co. v. Holloway,* 171 F.2d 670, 679 (8th Cir. 1958).[2]

Assuming that there was some violation of standard procedure in failing to utilize a manometer at the stove connection, that would not constitute actionable negligence unless it was the proximate cause of the casualty. *Grissom v. Handley,* 410 S.W.2d 681, 689 (Mo.App.1966). The record is absolutely destitute of any evidence of causal connection between the alleged failure to apply the manometer, the cracks in the supply lines found in the crawl space beneath the floor six months after the explosion, and the casualty. *Id.* at 689. If, in fact, the cracks in the pipes discovered six months after the explosion were extant at the time of the incident, which plaintiff only infers and which is contrary to her expert's own exploration, there is no evidence forthcoming through expert opinion or otherwise that whatever the defendant did or did not do caused the accident. In this regard plaintiff's case differs mightily from the measure of proof offered in *Salsberry v. Archibald Plumbing & Heating Co.,* 587 S.W.2d 907, 911 (Mo.App.1979), in which recovery for a gas explosion was allowed based on expert opinion as to cause. The submissibility of plaintiff's case depends on some substantial evidence to connect defendant to the explosion. The essential elements of proof in this case are missing, leaving the jury to resort—and improperly so—to conjecture as to the cause of the explosion. *Janis v. Jost,* 412 S.W.2d 498, 502 (Mo.1967).

There is no likelihood that the cracks in the pipes running beneath the floor in the crawl space could have been responsible for the explosion. As propane is heavier than air and seeks its lowest level, *Skelly Oil Co.*

2. For a thorough treatment of the law regarding gas explosions, see Annot., 41 A.L.R.3d 782 (1972).

*v. Holloway,* 171 F.2d at 676, had the gas leaked from the supply pipes, as inferred by plaintiff, it would have laid beneath the floor. As noted from the testimony at trial, the explosion was upward and outward. Yet, the floor of plaintiff's house remained intact—about the only part of the house that was not disturbed—so the explosion could not have come from that source. And that appears to have been the basis of trying to connect the defendant to a leak causing the explosion. From the evidence a jury could only speculate as to the cause of the explosion—an insufficient basis to support the verdict here. For that reason, the trial court erred in failing to grant defendant's motion for directed verdict. We must therefore reverse the judgment.

Judgment reversed.

PUDLOWSKI, P. J., and WEIER, J., concur.