**Carol MERCER and Jackie M. Mercer, Plaintiffs-Appellants,**

v.

**F.H. THORNTON, M.D., Defendant-Respondent.**

No. 12543.

Missouri Court of Appeals, Southern District, Division Three.

Jan. 7, 1983.

Motion for Rehearing or to Transfer to Supreme Court Overruled Jan. 31, 1983.

**376**

James C. Bullard, Kennett, for plaintiffs-appellants.

John L. Oliver, Jr., Oliver, Oliver, Waltz & Cook, Cape Girardeau, Manuel Drumm, Sikeston, for defendant-respondent.

GREENE, Chief Judge.

Plaintiffs, Carol and Jackie Mercer, sued Dr. Fred H. Thornton charging him with negligence (medical malpractice) in his care and treatment of Carol Mercer during and following a gastric bypass procedure resulting in injury and damages to plaintiffs. At the conclusion of plaintiffs' evidence, presented to a jury, the trial court directed a verdict in favor of Thornton, and entered judgment in his favor.

The Mercers raise several issues on appeal, including the contention that their evidence made a submissible case against Dr. Thornton. We agree with that contention and reverse and remand.

■ Whether the evidence is substantial enough to justify submission of a case to a jury is a question of law for the trial court. *Odum v. Cejas,* 510 S.W.2d 218, 225 (Mo.App.1974). A motion for directed verdict for a defendant should only be granted when no issues of fact remain for the jury to decide. *Teachenor v. DePriest,* 600 S.W.2d 122, 124 (Mo.App.1980). The sustaining of such a motion, at the close of plaintiffs' evidence, is a drastic action which should only be done when all of the plaintiffs' evidence, and the reasonable inferences to be drawn therefrom, are so strongly against plaintiffs that there is no room for reasonable minds to differ. *McCarthy v. Wulff,* 452 S.W.2d 164, 168 (Mo.1970); *Teachenor v. DePriest,* supra.

■ In determining whether a submissible case was made, we view the evidence in the light most favorable to plaintiffs, giving them the benefit of all reasonable and favorable inferences. *Woosley v. State Automobile Mutual Insurance Co.,* 600 S.W.2d 210, 213 (Mo.App.1980). The Mercers had the burden of showing that negligence of Dr. Thornton caused injury and damage to them. *Swope v. Printz,* 468 S.W.2d 34, 39 (Mo.1971). No presumption of negligence exists merely because of a bad result after surgery or treatment. *Odum v. Cejas,* supra 510 S.W.2d at 221. Conjecture and surmise are not sufficient criteria to justify the submission of a medical malpractice case to a jury. *Swope v. Printz,* supra at 40. Keeping these rules of law in mind, we review plaintiffs' contentions that they made a "paper case" of negligence in that Dr. Thornton failed to promptly diagnose a perforation of Carol's stomach after he performed a gastric bypass operation in 1979 on her, that he failed to refer Carol to a specialist or consult with a specialist after she developed complications following the gastric bypass surgery, and that such acts or omissions caused Mrs. Mercer's subsequent damages.[1]

---

1. These two theories of alleged negligence are the only ones, out of a multitude of allegations of negligence pleaded in plaintiffs' second amended petition, in which plaintiffs arguably made a submissible case. Thornton performed two gastric bypass surgical procedures on Carol Mercer, the first in 1977, and the second in July of 1979. The failure to consult and failure to refer allegations arising from the second surgery are listed in Count I, paragraph 16, subsections (d) and (e) of the second amended petition, which read as follows:

"(d) Defendant, F.H. Thornton, M.D. carelessly and negligently failed to seek and obtain any help or consultation regarding Plaintiff's condition.

■ Both of the negligence allegations required the support of expert medical testimony because more than common knowledge and experience would be required to understand whether such acts or omissions were negligent. See *Hart v. Steele,* 416 S.W.2d 927, 931–933 (Mo.1967), and *Fisher v. Wilkinson,* 382 S.W.2d 627, 632 (Mo.1964). We, therefore, consider the testimony of Carol Mercer, her husband, Jackie, and Dr. Charles Chastain, plaintiffs' non-treating medical witness. We also consider questions and answers from the deposition of Dr. Thornton which were admitted into evidence as admissions against interest, and those portions of the deposition of Dr. Lawrence Wruble, who treated Carol Mercer after she ceased being Dr. Thornton's patient, that were admitted in evidence and are contained in the record.

■ Carol Mercer testified that she was referred by another doctor to see Dr. Thornton for gallbladder surgery. Carol, weighing almost 250 pounds, also consulted with Thornton, a board certified abdominal surgeon, concerning a surgical technique for treatment of obesity known as a gastric bypass. This technique consists of implanting a row of staples across the upper part of the stomach, segmenting that portion from the rest of the stomach, thus limiting the area available for ingested food.

Dr. Thornton explained the gastric bypass procedure to Carol and her husband, gave them articles to read concerning the surgery, and advised them that the procedure was elective. With this knowledge and understanding, Carol was admitted to the Missouri Delta Community Hospital on October 31, 1977, for surgery.

On November 2, 1977, Dr. Thornton removed Carol's gallbladder and performed the gastric bypass. During the next 12–15 months, Carol did very well. She lost weight and resumed her normal activities. In the spring of 1979, Carol's appetite increased and she began to gain weight. She advised Dr. Thornton of this and he x-rayed her stomach. The x-rays revealed that part of Carol's stomach had pulled loose from the staples, permitting food to enter the entire stomach. Carol requested that Dr. Thornton perform a second operation to close the opening. This surgery was performed on July 11, 1979. Sutures, as well as additional staples were inserted to close the opening, according to Dr. Thornton's testimony.

Mrs. Mercer stated that when she awoke from the anesthetic after the second surgery, she experienced severe right shoulder pain. An electronic device and medication were used to ease the pain. Carol remembered Dr. Thornton using a large needle to take a sample of pus out of her right shoulder, remembered someone making an abscess drainage hole in her abdominal wall larger, and knew that she was in the hospital for 69 days, from July to mid-September in 1979. She did not remember having her 12th rib taken out. When Carol went home in mid-September, she still had a drainage hole in her stomach, and ingested food or drink would come out of that hole. She showed Dr. Thornton this problem and was readmitted to the hospital for another surgery to close the drainage hole. Carol could not recall if a gastric perforation was closed.

Carol was discharged from the hospital at the end of October 1979. Her legs ached and she was throwing up white phlegm. After her last consultation with Dr. Thornton in December 1979, Carol saw Dr. Lawrence Wruble, a gastroenterology specialist in Memphis, Tennessee. Dr. Wruble admitted Carol to the Baptist Memorial Hospital in Memphis for 12 days. Despite improvement since then, Carol still has trouble with her right side (pain in wearing clothes) and a weakness in her legs.

(e) Defendant, F.H. Thornton, M.D., carelessly and negligently failed and refused to refer Plaintiff to other doctors, hospitals and specialists for treatment and to correct Plaintiff's post-operative condition."

As to the allegation of failure to diagnose the gastric perforation earlier, the petition contains no such specific pleading of negligence. However, the trial court chose to allow the plaintiffs to proceed on this theory as an amendment to the second amended petition.

Mr. Mercer testified that when Carol developed complications after the July 1979 gastric bypass surgery, he asked Dr. Thornton whether Thornton should get the help of a specialist or move her to a better hospital. Thornton answered in the negative. Thornton sent Carol home in September 1979 because, according to Mercer, the doctor thought she needed a change to improve her mental outlook, and Carol had wanted to go home. Mercer stated that after the last surgery in October 1979, Carol showed some improvement.

Parts of Dr. Thornton's deposition entered into evidence as admissions provided testimony that 1) Thornton had never done a gastric bypass prior to the one for Carol Mercer; 2) Dr. Thornton was not aware, prior to August 1979, that intense pain in the back and shoulder indicates a gastric perforation; 3) in Thornton's opinion, the gastric rupture occurred within the first 24 hours of postoperative care due to over-distension of the stomach by Carol swallowing air; 4) after x-rays taken on July 23, 1979 indicated an abscess in Carol's diaphragm area, Thornton drained the abscess by removing her 12th rib and went through the bed of the rib opening into the abscessed cavity to clean the cavity and insert drains; 5) Carol's postoperative complications continued, so Thornton ordered a barium upper GI series on August 4. The test did not indicate a gastric leak; 6) while in the back of his mind, Thornton considered the possibility that a gastric perforation was causing Carol's problems, he elected not to take any steps, including the barium swallow test, to enable him to make such determination until August 4, because he "just didn't think it was necessary"; 7) the definitive diagnosis of a gastric leak was made by Thornton's associate, Dr. Helfrich, on August 10, and Thornton concurred in this diagnosis on August 16; 8) a gastrografin swallow test on August 22 revealed a gastric leak on the lower curvature of Carol's stomach; 9) Carol's condition improved and she was sent home on September 14, to be readmitted to the hospital on September 27 for a final surgical procedure to close the gastric perforation and the abscess drain hole; 10)

during the surgery on October 3, 1979, Thornton found a gastric perforation on the anterior wall of Carol's stomach and closed it; 11) Dr. Thornton probably could have eliminated Carol's bad postoperative experiences if he had immediately re-operated after the July 11 surgery and closed the gastric leak; 12) based on information Thornton now has from an expert in the gastric bypass field, he should have re-operated immediately after Mrs. Mercer developed the postoperative problems; and, 13) Thornton admitted that a consultation with an expert in the gastric bypass field might have been advantageous, prior to the infection setting in around July 23, and that he did not have a reason for not making such consultation.

Dr. Charles Chastain, plaintiffs' non-treating medical expert, provided the following opinion testimony: 1) the failure of Dr. Thornton to consult, after the July 1979 surgery, with an expert in the gastric bypass field, did not meet the standard of care required of a physician and surgeon practicing in the Sikeston, Missouri, area; 2) the failure of Dr. Thornton to diagnose a gastric perforation prior to August 16, 1979, did not meet the standard; and, 3) the removal of Carol's 12th rib was a result of Thornton's failure to diagnose the gastric perforation earlier.

Dr. Lawrence Wruble's testimony consisted primarily of his diagnosis and treatment of Carol Mercer. Wruble diagnosed her condition as "psychogenic vomiting" and a potential abnormal liver function. Wruble's treatment consisted mainly of psychotherapy and antidepressant medication. At the time of the trial, no abnormal liver function was noted.

Viewed in the light most favorable to the Mercers, we find that a submissible case was made on the issue of whether Dr. Thornton was negligent in failing to diagnose that Carol Mercer's postoperative problems and complications were caused by a gastric perforation at an earlier date than he did.

Chastain's testimony that Thornton's failure to diagnose the gastric perforation prior to August 16, 1979, did not meet the proper standard of care for doctors practicing in the Sikeston area, his testimony that such failure caused the complications that led to the removal of Carol's 12th rib, and Thornton's admissions that 1) he had considered the possibility of a gastric leak from the time Carol first had shoulder pain following the second surgery, but did nothing until August 4 to check that possibility, and 2) based on information he later obtained from an article by a bypass expert he would have immediately reoperated to close the leak after Carol developed problems, when coupled with Carol's testimony, made a submissible case.

The record is replete with problems of a procedural nature. Lack of specificity in plaintiffs' pleadings on the allegations of negligence, lack of specificity and legal conciseness in hypothetical questions posed to Dr. Chastain, questions raised as to the competence of Dr. Chastain and Dr. Wruble to testify regarding abdominal and gastric bypass surgery, and like matters plagued the learned trial judge throughout the trial, through no fault of his own. Hopefully, such problems will be avoided on retrial.

The order of the trial court directing a verdict in favor of Dr. Thornton is set aside, the judgment entered in his favor and against the Mercers is reversed, and the cause is remanded to the trial court for a new trial.

FLANIGAN, MAUS and PREWITT, JJ., concur.