Tom KILMER and Sharon Burnett,
Plaintiffs–Respondents,

v.

Bonnie BROWNING,
Defendant–Appellant,

and

KPL Gas Service Company,
Defendant–Appellant.

Nos. 16380, 16381.

Missouri Court of Appeals,
Southern District,
Division One.

March 12, 1991.

Jerry L. Holcomb, Collins, Webster & Rouse, P.C., Joplin, for plaintiff-respondent Sharon Burnett.

Abe R. Paul, C.R. Rhoades, Rhoades, Paul & Paul, Neosho, for plaintiff-respondent Tom Kilmer.

Theresa Ohler, Jon Dermott, Blanchard, Van Fleet, Martin, Robertson & Dermott,

Joplin, for defendant-appellant Bonnie Browning.

Thad C. McCanse, Flanigan, McCanse & Lasley, Carthage, for defendant-appellant KPL Gas Service Co.

PREWITT, Judge.

On July 30, 1990, this district filed an opinion affirming the judgment. Thereafter, on August 21, 1990, by written opinion, this district denied appellants' motions for rehearing or to transfer to the Supreme Court. Appellants then filed applications for transfer with the Supreme Court. It sustained the applications on October 16, 1990. On March 5, 1991, the Supreme Court entered the following order: "Cause ordered retransferred to the Missouri Court of Appeals, Southern District." With the addition of this paragraph our initial opinion and the opinion on the motion for rehearing or transfer are readopted. They are set out hereafter.

Plaintiffs brought an action for the wrongful death of their son. They received a jury verdict in their favor for three hundred thousand dollars with fault apportioned 50% against each defendant. Both defendants appeal and their appeals have been consolidated.

Following the verdict, plaintiffs filed a motion requesting prejudgment interest as provided in § 408.040.2, RSMo Supp.1989. Initially the trial judge declined to rule the motion pending appeal. This court requested the parties to include in their briefs whether there was a judgment because this motion was not directly ruled. After that order was issued the trial court sustained the motion. Although no point of defendants directly challenges the allowance of the interest, in their point regarding the finality of the initial "judgment" defendants question whether the trial court properly and correctly handled the interest issue.

■ Plaintiffs followed the proper procedure by filing a motion after the verdict

and proving the necessary elements contained in that section, and were entitled to the interest. Whether a plaintiff might be entitled to it cannot be determined until the trier of fact has determined the damages and the court has indicated that a judgment would be entered including that amount. When this has occurred, prejudgment interest, if any, should be determined, and if granted included in the judgment. In wrongful death actions the damages should also be apportioned as provided in § 537.095.3, RSMo 1986. See *Schaefer v. Yellow Freight Systems, Inc.*, 788 S.W.2d 345 (Mo.App.1990); *Bragg v. Missouri Pacific R.R.*, 756 S.W.2d 666 (Mo.App.1988). That occurred here, if somewhat belatedly.[1]

Certain facts are undisputed. Other evidence will be referred to in discussing defendants' contentions. Plaintiffs' son Richie Kilmer was found dead on December 30, 1987, in his duplex apartment in Joplin. He was 20 years old. A sample of his blood upon analysis showed that he had died from carbon monoxide poisoning. He lived alone in the apartment. He moved into the apartment four days before his body was discovered. Defendant Bonnie Browning was the owner of the one story building and defendant KPL Gas Company furnished gas used by appliances in the building, including the furnace in Richie Kilmer's apartment.

The duplex had previously been a single family dwelling. It was more than fifty years old. The two units were heated by separate floor furnaces. The floor furnaces were vented by a vent system connected and located in a crawl space under the building.

Access to the crawl space was a small hole in the foundation in the southeast corner of the building. During the winter months the crawl space was closed with a board. Defendant Browning testified that the crawl space was not part of the premises rented to a tenant and she would not expect them to go under the house. She and her previous husband had owned the

---

1. Although there is no one document disposing of all the issues, separate entries can result in a "judgment" from which an appeal can be taken.

See *Wood v. Wood*, 716 S.W.2d 491, 495 (Mo. App.1986).

premises since 1969 and since their divorce in 1979 she owned it individually. To her knowledge the vent system had never been inspected and she had no maintenance or inspection plan for the condition of the duplex. If anything was not functioning properly she relied upon her tenants to inform her and she had repairs made, usually by others. Certain facts are not disputed. As defendant KPL Gas Service Company stated in its brief:

> Here the evidence is overwhelming that the condition which caused the death was the collapse of the venting system. The evidence was uncontested that Richie Kilmer died of carbon monoxide poisoning, that heated exhaust gases such as would normally go through a vent system will rise, that carbon monoxide is the by-product of burning natural gas, and that the purpose of the vent pipes is to carry the exhaust fumes to the outside air. [omitting transcript page citations]

■ Each defendant asserts that the trial court erred in denying its motion for a directed verdict because plaintiffs failed to make a submissible case. In reviewing these contentions we must consider that a motion for directed verdict is a drastic action which should only be sustained when the evidence and reasonable inferences thereof taken most favorably to the plaintiff leave no room for the jury to find the facts necessary for plaintiff's recovery. *Mercer v. Thornton,* 646 S.W.2d 375, 376 (Mo.App.1983); *Ogle v. Webb,* 623 S.W.2d 582, 583–584 (Mo.App.1981).

### DEFENDANT BROWNING'S APPEAL

#### I

Defendant Browning's contention that there was not a submissible case made against her is in three parts: (1) that there was no evidence that she could have known that the heat venting system did not properly vent the carbon monoxide from Richie Kilmer's apartment; (2) that there was no evidence that she retained control of the heat venting system; and (3) there was no evidence that she failed to use ordinary care to make the heat venting system reasonably safe.

■ Although as defendant Browning suggests, a landlord is not an insurer of the premises, *Thompson v. Paseo Manor South,* 331 S.W.2d 1, 3 (Mo.App.1959), nor strictly liable for latent defects absent actual or constructive knowledge of the defect, *Henderson v. W.C. Haas Realty Management,* 561 S.W.2d 382, 387 (Mo. App.1977), she has a duty to make the leased portions of the apartment building under her control reasonably safe, *Niman v. Plaza House,* 471 S.W.2d 207, 210 (Mo. banc 1971). Defendant Browning avoided this duty by ignoring the premises and its appliances, particularly those which could pose a danger such as asphyxiation by an odorless gas.

The jury could, and apparently did conclude that defendant Browning was negligent in not inspecting or in not having the venting system of the furnace inspected. Parts of the pipes of that venting system were in evidence and show rust and other indications of deterioration. There was testimony that this deterioration had taken place over five years. Anyone looking at the pipes in such a condition would be aware that there was potential for harm and that corrective measures would have to be made to make the system safe. Subpoints No. 1 and No. 3 have no merit.

■ Subpoint No. 2 likewise fails. The venting system was for both apartments, it was in an area not rented to the tenants nor where they were expected to go. Even where there are plumbing and heating fixtures in an apartment leased to tenants, they are usually controlled by the landlord as they must be maintained and used in conjunction with the entire building. Ordinarily a landlord retains control of an entire heating system. See *Niman v. Plaza House, Inc.,* supra 471 S.W.2d at 210; *Thompson v. Paseo Manor South, Inc.,* supra 331 S.W.2d at 4. Compare also the similar case of *Marentette v. Luechtefeld,* 268 S.W.2d 44 (Mo.App.1954).

*Janis v. Jost,* 412 S.W.2d 498 (Mo.1967), cited by Browning, is not in point. It involved the lease of a single family home where the landlord did not keep any control

over the premises. Obviously in an apartment house there must be common areas and control of a portion of the premises by its owner. A submissible case was made against defendant Browning.

## II

▪ Defendant Browning contends that the trial court erred in submitting a verdict directing instruction tendered by plaintiff because it failed to require finding that defendant Browning retained control of the heat venting system. As pointed out in our immediate previous discussion regarding control of the venting system, there was no question but that the landlord retained control of it. One or the other of the tenants would not be under control of a system which was to operate for the benefit of both of them. In addition, it was not in an area leased to the tenants or where they were expected to go. *Niman, Thompson, and Marentette,* state that in a situation as here, the landlord has control of the heat venting system as a matter of law. There was no issue on control for the jury to consider. This contention is denied.

## III

▪ Defendant Browning claims that the damage instruction was erroneous because it allowed the jury to consider "aggravating circumstances attendant upon the fatal injury." Section 537.090, RSMo 1986, provides that "aggravating circumstances attending the death may be considered by the trier of the facts".[2]

Such damages are punitive in nature and their purpose is to punish the defendant and deter future wrongdoing. *Blum v. Airport Terminal Services, Inc.,* 762 S.W.2d 67, 73 (Mo.App.1988); *Williams v. Excavating & Foundation Co.,* 230 Mo. App. 973, 93 S.W.2d 123 (1936).

▪ Aggravating circumstances are not present if there is mere negligence; it requires a showing of willful misconduct, wantonness, recklessness, or a want of

care indicative of indifference to the consequences. *Weast v. Festus Flying Service, Inc.,* 680 S.W.2d 262, 266 (Mo.App.1984).

▪ Damages for aggravating circumstances are akin to punitive damages and are permissible only if the decedent would have been entitled to punitive damages had he lived. *Blum,* 762 S.W.2d at 73. "Submission of aggravating circumstances is proper when the defendant could have reasonably been charged with knowledge of a potentially dangerous situation but failed to act to prevent or reduce the danger." *Id.*

▪ Here, defendant testified that in effect she ignored the condition of the premises except when notified by a tenant of a problem. Obviously, some defects, as occurred here, might only be discovered when it is too late to prevent death or injury. Evidence showed that due to deterioration the pipes which had been rusting for at least five years caused Richie Kilmer's death. Because carbon monoxide is odorless, its discharge should be carefully monitored and it was not here. We conclude it was for the jury to determine if aggravating circumstances were present.

## IV

Browning asserts that the trial court erred in allowing in evidence photographs and personal writings of the decedent because these exhibits were evidence of plaintiffs' grief and bereavement specifically excluded from recovery under § 537.090, RSMo 1986.

Section 537.090, provides that the trier of fact may award damages "having regard to the pecuniary losses suffered by reason of the death ... and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death". It also provides that damages for grief and bereavement are not recoverable.

---

**2.** Generally on wrongful death damages, see *Wright, Damages Under the Missouri Wrongful*

*Death Act,* 37 Mo.Bar J. 92 (1981).

A factor to be considered in evaluating damages under the Wrongful Death Act is potential financial aid by the decedent, which can be shown through evidence of the decedent's health, character, talents, earning capacity, life expectancy, age, and habits. *Grothe v. St. Louis–San Francisco Railway Co.*, 460 S.W.2d 711, 718 (Mo.1970). On the nonpecuniary considerations evidence of the parent-child relationship is relevant. See *Morrissey v. Welsh Co.*, 821 F.2d 1294, 1300 (8th Cir. 1987); *Wright*, supra n. 2, at 96. Paintings by a decedent's daughter were held admissible in *Hedrick v. Kelley*, 734 S.W.2d 529, 532 (Mo.App.1987), as related to the daughter's interest and talents.

The evidence complained of was photographs of Richie Kilmer, articles and poems written by him, and awards he received. Evidence relating to character, talents, habits, companionship and nonpecuniary support may also indicate grief and bereavement. Much of the evidence regarding the former may incidentally relate to the latter. However, that would not prevent its admission if it was otherwise admissible to show authorized losses. Here, we find no abuse of the trial court's discretion in admitting the exhibits. This point is denied.

V

Defendant Browning contends that the trial court erred in admitting certain testimony of Thomas Mundy, a medical physician, "because his testimony was incompetent in that his opinions were not based upon a reasonable degree of medical certainty." Richie Kilmer was born with a hemophilia condition. For that condition he received injections to aid in the coagulation of his blood. As a result of this treatment in September of 1987 he tested positive for the Human Immunodeficiency Virus (HIV), which causes Acquired Immune Deficiency Syndrome (AIDS).[3]

Mundy was a Pediatric Immunologist. He practices medicine at a hospital in Los Angeles. During his testimony, presented by deposition, the following occurred:

Q. Based upon your review of the medical records and the diagnostic test, have you arrived at any conclusions about what Richie's prognosis was at this stage of the disease?

A. The main thing you would have to say is nobody knows. I would be quite encouraged by what I see there. He was 20 years old. He had acquired his infection in a time, age wise, when he falls into a better group. It was blood-product-acquired infection, as opposed to any other mechanism. We know that those do better. He had a low T-cell account on one occasion, but I wouldn't put too much stock in that. One, we don't know how the blood was handled, and, two, it was at the time of infection, and I never make any clinical decisions on the basis of just one lab test. I would want to that know the trend, and would want to repeat that.

And he was a patient that appeared to be a fighter and do well with chronic illness.

He was just about to go to be evaluated to be a protocol to begin AZT. I'm sure that same Center, probably, had available aerosolized pentamydine or the pentamydine spray. With a watchful eye to looking for opportunistic infections in patients using proplylactic[4] treatments like the pentamydine spray aggressively and any time some new treatment may become available on AZT and perhaps as I call it XYZ which will be the next better drug than AZT that we have. I think he could have done well for a number of years and perhaps until we have that drug that becomes the cure for AIDS.

The trial court is vested with substantial discretion in admitting expert testimony. *Miller v. Weber*, 688 S.W.2d 389, 391 (Mo.

3. For a series of informative articles on AIDS see 29 *The Judges' Journal* (Spring 1990).

4. A check of various dictionaries, including The Sloane–Dorland Annotated Medical–Legal Dictionary (1987), failed to reveal any entry for "proplylactic". We claim little medical knowledge but suggest that since Dr. Mundy was referring to a preventive treatment of pneumocystic pneumonia, the word he used may have been "prophylactic".

App.1985). No abuse of discretion is found here. The cases relied on by defendant Browning all relate to expert opinion on the issue of causation. Those citations are set forth below.[5]

The ultimate test of admissibility of expert testimony is whether it will help the jury. *Hendricks v. Missouri–Kansas–Texas R. Co.,* 709 S.W.2d 483, 493 (Mo.App. 1986). Here, the testimony may have been helpful to the jury because of the possibility of misconception regarding AIDS, and, as is obvious to the jury and us, no one knows what may have taken place in the future regarding the cure of AIDS had Richie Kilmer developed it. There was no abuse of discretion in admitting the testimony.

## VI

Defendant Browning's remaining contention is that the trial court erred in admitting into evidence standard mortality tables because decedent did not have a normal life expectancy; he had hemophilia, had been exposed to the HIV virus, and "would probably develop AIDS." As defendant Browning acknowledges, there is authority that such tables "are admissible notwithstanding the person whose life expectancy is the subject of inquiry is in poor health, afflicted with disease, or addicted to dissipated habits." *Moore v. Ready Mixed Concrete Co.,* 329 S.W.2d 14, 28 (Mo. banc 1959).

Mortality tables are only guides or suggestions to the finder of fact. *Guthrie v. Missouri Methodist Hospital,* 706 S.W.2d 938, 943 (Mo.App.1986). Their probative value may be weakened by evidence of ill-health and these matters may be considered by the jury in weighing the testimony. *Id.* There was no error in admitting the mortality tables.

## DEFENDANT KPL GAS COMPANY'S APPEAL

### I

As earlier mentioned, defendant KPL contends that plaintiffs failed to make a submissible case. Its contentions are set forth in its brief as follows:

there is no evidence that the condition which caused the death was in existence at the time that defendant had any duty to make any type of an inspection.... Where the alleged negligence is a failure to inspect a system for venting gases, an indispensable element of the cause of action is proof that at the time of the inspection the condition which caused the death was in existence.

Defendant KPL argues that there was no evidence that the vent system was inoperative prior to October 21, 1987. Its employee Keith Doyle testified that he was in the crawl space where the vent pipes were on that date. Doyle was there to inspect the furnace and its venting system before turning on the gas. Defendant KPL also asserts that there was evidence that the system was "still intact and functioning" in November and December of 1987 because persons present in the building noticed no odor or fumes or problem with the furnace. There was evidence that carbon monoxide fumes are odorless, but even if none were present, the question is not whether the venting system was operating properly at the time of Doyle's inspection, but whether he knew or should have had notice that the system was in need of repair and that if it was not repaired or replaced it would malfunction.

Defendant KPL cites *Janis v. Jost,* supra; *Samnee v. Home Service Propane,* 617 S.W.2d 463 (Mo.App.1981); and *Raftery v. Kansas City Gas Co.,* 237 Mo.App. 427, 169 S.W.2d 105 (1943), in support of their position that no case was made against it. Although these cases involved problems with gas appliances, they are not controlling. In *Raftery,* a hot water heater exploded two weeks after the gas company serviced the appliance and there were reasons other than a clogged flue why a pilot light could go out. In *Janis,* there was a

---

**5.** *Missouri Farmers Ass'n v. Kempker,* 726 S.W.2d 723 (Mo. banc 1987); *Galovich v. Hertz Corp.,* 513 S.W.2d 325 (Mo.1974); *Kinealy v. Southwestern Bell Telephone Co.,* 368 S.W.2d 400 (Mo.1963); *Shackelford v. West Central Electric Co-op.,* 674 S.W.2d 58 (Mo.App.1984).

year and a half gap between the inspection and the death and the accumulation in the flue could have occurred in a much shorter time. In *Samnee,* the plaintiff could not show that it was a leak in the propane lines that caused the house to explode. The leaks were discovered six months after the explosion but the pipes had been inspected the day following the accident.

 Notice to defendant KPL does not mean that defendant had to explicitly know that the venting system was defective but it is sufficient if it had received facts that would have made such clear to an ordinary prudent person. "Notice does not mean positive information brought directly home to a party ... but any fact that would put an ordinary prudent man upon inquiry, is notice." *Barrickman v. National Utilities Co.,* 191 S.W.2d 265, 269 (Mo.App.1945) (involving a gas explosion).

 A venting pipe which had rusted completely through was in evidence. A witness testified that it would take in excess of five years for it to develop such rust. It was photographed on January 12, 1988, and there was evidence that it was in substantially the same condition on that date as it was when introduced at trial.

Even if the vent system was intact on October 21, 1987, there was evidence that the pipes were in a deplorable condition. That pipe and photographs of the other connecting pipes indicate that the venting system had been deteriorating for some months. The jury could have believed from the evidence that Doyle did not conduct an adequate inspection of the system or he would have seen how badly the pipes were rusted. By using common knowledge, the jury could determine that Doyle should have known that the venting system was in a deplorable condition and in need of repair but that he did not realize its danger when he should have.

## II

Defendant KPL's next point contends that the submission instruction tendered by plaintiffs was defective in several respects hereinafter set forth. The first contention we address is its claim that the instruction omitted essential elements because it failed to require findings that KPL "had notice or knowledge of the defective condition which caused Richie Kilmer's death", and that its "employee Doyle appreciated that there was a dangerous condition which might cause death when he made his visual inspection on October 21, 1987".

Plaintiffs tendered the verdict directing instruction against KPL Gas Service Company following MAI–20.01 "Verdict Directing—Wrongful Death—Single Negligent Act Submitted". The instruction given stated:

Your verdict must be for Plaintiffs against Defendant KPL Gas Service, if you believe:

First, Plaintiffs were the parents of the Richie Kilmer, and

Second, that on October 21, 1987, the exposed metal flue pipes and connectors to the floor furnace were defective and as a result the floor furnace was not reasonably safe, and

Third, Defendant KPL Gas Service failed to adequately inspect the exposed metal flue pipes and connectors to the floor furnace, and

Fourth, Defendant KPL Gas Service was thereby negligent in supplying gas to the floor furnace, and

Fifth, as a direct result of such negligence, Richie Kilmer died.

 Failing to adequately inspect in many respects is akin to failure to keep a proper lookout in an automobile collision case. When an automobile driver has a duty to look he is held to have seen what looking would have revealed. *Finninger v. Johnson,* 692 S.W.2d 390, 394 (Mo.App. 1985). It includes a situation where one does not look with sufficient care to appreciate and apprehend the danger. *Flannery v. Whitaker,* 612 S.W.2d 146, 148 (Mo.App. 1981). In submitting failure to keep a lookout, it is sufficient to hypothesize that failure together with a finding of causation and it is unnecessary to submit the further hypothesis that by keeping a proper lookout defendant could have seen plaintiff or could have averted the collision. *Lincoln*

*v. Railway Express Agency, Inc.*, 359 S.W.2d 759, 768 (Mo.1962); *Morgan v. Toomey*, 719 S.W.2d 129, 133 (Mo.App.1986).

▮ Although to submit a lookout instruction the plaintiff must show that the defendant knew or should have known of the potential danger and that the defendant had time thereafter to take effective precautionary action, it is not necessary to explicitly set forth in the instruction a finding of the means and ability to take effective action. *Morgan*, 719 S.W.2d at 133. The time and means to take effective precautionary action are submitted implicitly. *Id.* See also *Allen v. Andrews*, 599 S.W.2d 262, 265 (Mo.App.1980) (the lookout instruction "presupposes the time and means to take effective precautionary action").

▮ Here, the instruction required the jury to find that KPL Gas Service Company was negligent in their inspection and as a direct result of that negligence Richie Kilmer died. It necessarily required the jury to find that if the inspection had been adequate that Doyle would have found and realized the danger.

▮ KPL further contends that the instruction was confusing and misleading and allowed the jury to speculate by referring to "the floor furnace" when there was evidence regarding two floor furnaces. The jury should have known what floor furnace was referred to but even if they did not the instruction was not prejudicially erroneous. Both floor furnaces used the venting system which the jury could have found was in a dangerous condition when Doyle was on the premises. If the venting system was dangerous and later collapsed, it created a dangerous condition for both apartments. After Richie Kilmer's death carbon monoxide was present in the open air of both apartments. There was also evidence that the tenant in the apartment adjoining Richie Kilmer's had headaches near the time of Richie Kilmer's death. The headaches went away after the venting system was corrected.

▮ Defendant KPL Gas Service Company asserts that the submission instruction submitted negligence of an unsafe con-dition of the floor furnace when that was not pleaded. Plaintiffs plead that KPL "was negligent and careless in the ... inspection of the premises in question...." Such an allegation was sufficient to support the instruction as it was "within the general scope of the pleadings." *Fisher v. McIlroy*, 739 S.W.2d 577, 580 (Mo.App. 1987).

▮ Defendant KPL also contends that paragraph third in the submission instruction was erroneous because it "was not a submission of an ultimate fact and gave the jury a roving commission to speculate and determine on its own what was or was not an adequate inspection."

Rule 70.02(e) requires that an instruction "shall not submit to the jury or require findings of detailed evidentiary facts." The MAI Instructions created a shift from requiring the jury to find evidentiary details toward a requirement of finding only ultimate facts. *Zipp v. Gasen's Drug Stores, Inc.*, 449 S.W.2d 612, 617 (Mo.1970). Of course, it is difficult to determine what are evidentiary facts as distinguished from ultimate facts and that decision has to be made on a case by case basis. *Grindstaff v. Tygett*, 655 S.W.2d 70, 73 (Mo.App.1983).

Defendant KPL Gas Service Co. states that the instruction is in violation "by submitting evidentiary rather than ultimate facts." We do not find the instruction deficient on that basis. The ultimate question was whether Doyle adequately inspected which, in this instance, would necessarily have been an adequate look at the venting system.

*Grindstaff v. Tygett*, supra and *Glastris v. Union Electric Co.*, 542 S.W.2d 65 (Mo. App.1976), cited by KPL, do not support this argument. *Grindstaff* involved an instruction which included a finding that a "procedure was not medically proper". There were two possible theories of what was not proper and there were no standards or guidelines for the jury to determine what was medically proper. Obviously what is not medically proper would not be within the knowledge of most jurors except for the simplest procedures. Here,

their common sense could lead them to determine whether, based on the evidence, the inspection was adequate. *Glastris* involved an instruction that submitted evidentiary fact rather than the ultimate fact of negligence. We see no basis that it is similar because failing "to adequately inspect" was not evidentiary detail but was an ultimate issue.

### III

Defendant KPL asserts in its next point that the submission instruction was not supported by the evidence "in that there was no evidence that either floor furnace in the premises was not reasonably safe or that the exposed metal flue pipes and connectors to the floor furnace were not reasonably safe and were defective on October 21, 1987". What was said earlier in determining that a submissible case was made against this defendant answers this contention. As mentioned there, it is not whether the venting system was not operating on October 21, 1987, but whether it was in a dangerous condition which called for repair or replacement. This point is denied.

### IV

Defendant KPL Gas Company states in its final point that the court erred in allowing the jury to consider aggravating circumstances in determining damages. Requirements for submitting such damages are set forth in our discussion of defendant Browning's similar contention under her appeal, III. The jury could well find that on October 21, 1987, when Doyle was present, that a dangerous condition existed that he should have recognized. Defendant KPL Gas Company and its employees who make such an inspection would be aware of the dangers of carbon monoxide. Failing to adequately examine the venting system or ignoring its condition is indicative of indifference to the consequences which would justify allowing the jury to consider damages for aggravating circumstances. Cf. *Blum*, supra 762 S.W.2d at 74, 77. Submitting the instruction was not error.

### CONCLUSION

This court finds no prejudicial error in the respects complained of by either defendant. The judgment, including the award of prejudgment interest and the apportionment of damages, is affirmed.

CROW, P.J., and PARRISH, J., concur.

### ON MOTIONS FOR REHEARING OR TRANSFER

PER CURIAM.

Both defendants have filed a motion for rehearing or in the alternative a motion to transfer to the Missouri Supreme Court. We believe one contention should be addressed for clarification. Defendant–Appellant Bonnie Browning asserts:

> By holding that separate entries from the trial court (some made before and some made after the Notice of Appeal was filed in this case) can result in a "judgment" from which an appeal can be taken, this Court has permitted the trial court and the appellate court to exercise jurisdiction over this judgment simultaneously which is a misapplication of the law.

Defendant Browning contends that after May 23, 1989, when she filed her notice of appeal, the trial court lacked jurisdiction to thereafter rule on the motion for prejudgment interest. She states that this court allowed jurisdiction of this matter to "remain in both the trial court and the appellate court simultaneously." This contention has no merit. Defendant Browning's notice of appeal was filed prematurely and did not divest the trial court of jurisdiction nor confer jurisdiction here.

There was no "final judgment" in this matter until well after the trial court awarded prejudgment interest. That did not occur until the trial court apportioned the recovery between plaintiffs pursuant to § 537.095.3, RSMo 1986. Until that time, jurisdiction was not lodged here, but remained in the trial court. *Schaefer v. Yellow Freight Systems, Inc.*, 788 S.W.2d 345, 346 (Mo.App.1990); *Bragg v. Missouri Pacific Railroad*, 756 S.W.2d 666, 667–668

(Mo.App.1988). See also *Jurgens v. McKasy*, 905 F.2d 382, 384–385 (Fed.Cir.1990) (holding that a motion for prejudgment interest filed after a judgment entry renders of "no effect" a notice of appeal filed before that ruling).

In *Jurgens*, the court dismissed the appeal noting it could not consider an appeal under a premature notice of appeal. In this respect, Missouri law is different. Rule 81.05(b) provides that if a notice of appeal has been filed prematurely "such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal." This rule applies in any case where the notice of appeal precedes the time an appealable judgment appears. *Meyer Supply Co. v. Lane*, 741 S.W.2d 304, 306 (Mo.App.1987). After a judgment is entered, jurisdiction vests in the appellate court to decide the substantive issues of the appeal based upon the premature notice of appeal. *Id.*

Until damages were apportioned, no final judgment had been entered and the trial court retained jurisdiction. It was only after the apportionment occurred that this court obtained jurisdiction, upon the premature notice of appeal. It then proceeded to dispose of the issues.

The motions of defendants for rehearing or in the alternative for transfer to the Missouri Supreme Court are denied.